# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS

FOURTH DISTRICT—FEBRUARY TERM, 1893.

## Conyne, Stone & Co. v. Jones.

1. ATTACHMENT—*Fraud—Judgment In Rem.*—The fraud as well as the act must be proved in order to justify a judgment *in rem* in attachment proceedings on the ground of a fraudulent transfer of property, but if a transfer is made without consideration by an insolvent, the fraud may be inferred, as every one is presumed to intend the natural consequences of his voluntary act.

2. ATTACHMENT PROCEEDINGS—*Fraudulent Disposal of Property—Ignorance no Defense.*—It is no defense in attachment proceedings to say that it was not known that the property claimed to have been fraudulently disposed of, could be made subject to the parties' debts, if in fact and law it could be so made subject. Ignorance of the law is no defense, even where interest is essential to be established to constitute crime, and it is not competent to aver such ignorance.

3. INSURANCE—*Organizations not for Pecuniary Profit—Policies not Commercial.*—Where the object of an insurance association is not for the pecuniary profit of its members insured, by an investment of money or otherwise, but to furnish cheap insurance for the benefit of those dependent upon the insured, and its express provisions are that its members shall receive no money as profits, its policy is not commercial.

4. INSURANCE—*Associations for Mutual Benefit, not for Gain.—Construction of Statutes.*—The statute relating to mutual benefit life insurance companies, and their contracts with the members, should receive a liberal interpretation in the spirit of the purpose to be accomplished. They should not receive the strict and rigid construction as applied to the law of descent but rather the free construction as applicable to the law of wills.

5. INSURANCE—*Contract—Naming the Beneficiary.*—So far as the naming of the beneficiary in a certificate of mutual benefit insurance is

concerned, such certificate partakes of the nature of a will, and, without consideration like a will, is a mere declaration of a purpose to bestow a bounty which until death vests no rights of property in the legatee or beneficiary.

6. CONTRACTS OF INSURANCE—*Notice of the Contract.*—Where a person enters into a contract of insurance, and pays the premiums or assessments, it exists as a contract between him and the company or association alone. If he fails or refuses to pay the premium or assessments, the beneficiary can not compel him to pay; nor can such beneficiary compel the company or association to receive such payment from him to prevent a forfeiture; neither could he pay in the name of the insured and thereby make himself voluntarily the creditor of the insured.

7. INSURANCE—*Beneficiaries in Policies—Vested Rights.*—The beneficiary named in a policy of life insurance has no vested right of property in the policy; the nature of the right comports more nearly with the legal idea of a proposed or unexecuted gift.

8. INSURANCE—*Right to Change the Beneficiary.*—Where a contract of insurance is made and the consideration is paid by the insured for the benefit of another, the beneficiary may be changed at any time by the consent of the contracting parties, though no reservation therefor was originally made.

9. INSURANCE—*Assignment of Policy—Reservation.*—When a policy of insurance having a commercial value was assigned, with the consent of the insurance company, and the assignment contained a clause providing, in the event of the death of the assignee before the death of the assignor, then the policy should revert to him the same as if no assignment had been made, *it was held,* that the limitation in the assignment gave the assignee no right to revoke the policy or in any way change it during the life of the assignor.

10. INSURANCE—*Power to Assign Policy with Limitations.*—An assignment of an insurance policy by a husband to his wife, with a limitation expressed in the assignment that in the event of her death before the assignor, it was to revert to him, the said assured, the same as if no assignment had been made, contravenes no law and is not against public policy.

11. INSURANCE—*Policy a Chose in Action.*—A policy of insurance having a commercial value is property, and in general terms is called a chose in action. If fraudulently disposed of to defeat creditors it may be reached by a creditor's bill.

12. FRAUD—*Disposal of Insurance Policy to Hinder or Delay Creditors.*—It is a fraud, within the meaning of the attachment act, to dispose of, to hinder creditors, any kind of property that might be used by them to satisfy their debts; a policy of insurance having a commercial value is such property, and if assigned or disposed of for such a purpose fraudulently, it may be reached by attachment.

**Memorandum.**—Attachment proceedings. Appeal from the Circuit Court of Randolph County; the Hon. BENJAMIN R. BURROUGHS, Judge,

presiding. Heard in this court at the February term, 1893. Reversed and remanded. Opinion filed June 26, 1893.

## Statement of the Case.

This suit was a proceeding in attachment brought by the appellants, who are wholesale dealers in clothing, against appellee, who conducted a retail business in clothing, etc., under the style of "G. S. Jones, agent." The ground for the attachment alleged in the affidavit, is that appellee had within two years, then last past, fraudulently conveyed or assigned her property, or a part thereof, so as to hinder and delay her creditors. No contest is made as to the existence of a debt, and judgment has been entered in favor of appellants and against appellee for the amount claimed by appellants, $1,051.90. On the attachment issue, however, the finding and judgment were in favor of the defendant, and the attachment was quashed. From this judgment an appeal has been taken, which brings before this court the attachment issue, and the questions involved in and connected with it. On the trial below only one act of appellee was attacked as fraudulent, namely, her transfer without consideration to her son and daughter, one day before confessing judgment in favor of her son-in-law, of certain policies of insurance held by her as assignee on the life of her husband, a man seventy-five years old, one of which policies had then a cash surrender value of more than $1,100. The attachment writ of appellants was levied on the goods in the store of the appellee, subject to a prior levy of an execution in favor of George Neville, under which said goods were then held and under which they were thereafter sold, except about $150 worth. There were some old accounts, but they were substantially worthless. It is not disputed but that at the time of the assignments of these policies the appellee was insolvent and about to fail in business, and that no consideration was paid or promised for the assignments. There were two policies of insurance, or rather one policy and one certificate of membership in a mutual benefit society, taken out by Gabriel S. Jones, the husband of appellee;

one in the Masonic Pythian Association of Chicago, Illinois, a mutual benefit organization, and the policy in the Mutual Benefit Insurance Company of New Jersey, the former for $3,000, and the latter for $3,300; the date of the issue of either, originally, is not shown by this record. The former was originally taken out by the husband in his name and on his contract for the benefit of his wife, the appellee, while the latter was taken out for his own benefit. Both had been issued for many years before this suit was instituted. The policy was used by Gabriel S. Jones as collateral security for $740 which he obtained as a loan from the company in 1885, and thereafter, on the 17th day of August, 1885, it was transferred by mesne assignments to the appellee by the consent of the company. Shortly before the failure of appellee in business, these evidences of insurance were transferred to the son and daughter of Gabriel S. and Lucinda M. Jones.

The certificate was surrendered for cancellation and a new one issued. The policy was assigned by appellee with the consent of the company, at which time it had a cash surrender value of $1,191.18 over and above the $740 of loan heretofore mentioned. The certificate which was introduced in evidence makes no provision for a change of the beneficiary. No rule or regulation of the association was introduced to show what they provided for in this regard. The same is true as to the policy, which was not introduced in evidence, and therefore its terms or conditions are not known.

APPELLANTS' BRIEF, SHEDD & UNDERWOOD, AND H. CLAY HORNER, ATTORNEYS.

The appellants contended that the rule as to fraudulent alienation includes life insurance policies, which are choses in action. Bank v. Hume, 128 U. S. 204; Drake v. Rice, 130 Mass. 410; Stokoe v. Cowan, 29 Beav. 637; Burton v. Farinholt, 86 N. C. 260; Anthracite Ins. Co. v. Sears, 109 Mass. 383; Ionia Bk. v. McLean (Mich.), 48 N. W. Rep. 159.

A life insurance policy before the decease of the assured is

property and belongs to the beneficiary.    Glanz v. Gloeckler, 104 Ill. 573; Sauerbier v. Union Central Life Insurance Co., 39 Ill. App. 620; Putnam v. New York Life (La.), 7 So. Rep. 620; Lemon v. Phœnix, 38 Conn. 294; May on Insurance, 391; Hubbard v. Stapp, 32 Ill. App. 545; Troy v. Sargent, 132 Mass. 408; Hutson v. Merrifield, 51 Ind. 24; Harley v. Heist, 86 Ind. 196; Bank v. Hume, 128 U. S. 204.

A life insurance policy can not be transferred without the consent of the assignee, or beneficiary.    Pence v. Makepeace, 65 Ind. 358; Newcomb v. Mutual Life Ins. Co., 9 Ins. Law Jour. 124; Ferdon v. Canfield, 104 N. Y. 143; Wilmaser v. Cont. Life Ins. Co., 66 Iowa, 417.

A policy of life insurance or its proceeds, is not exempt under the statute from debts of wife, who is beneficiary or assignee, but only from those of the husband, being the assured.    Smedley v. Felt, 43 Iowa, 607, under Iowa Statute, Vol. 1, Sec. 1756, page 441 of McClain's Rev. Stat.; Murray v. Wells, 53 Iowa, 256; Norris v. Mass. Mut. Life Ins. Co., 131 Mass. 294.

APPELLEE'S BRIEF, HARTZELL & SPRIGG, ATTORNEYS.

It was contended by the appellee that in the absence of any statute affecting the question, the true rule is that the beneficiary named in the policy, while taking such an interest in it as entitles him or her to receive the money when by the terms of the policy it becomes payable, yet such interest is a mere expectancy and subject to the right of the insured, who pays the premiums and retains control of the policy, to dispose of it, or to change the beneficiary, with the consent of the insurer.    Johnson et al. v. Van Epps, 14 Brad. 209; Clark v. Durand, 12 Wis. 223; Gambs v. Mutual Life Ins. Co., 50 Mo. 44; Doll v. Lincoln, 31 Mo. 428; Eadie v. Slimmon, 26 N. Y. 9; Smillie v. Quinn, 90 N. Y. 492.

The assignment of an insurance policy, held by the wife as beneficiary, on the life of her husband, and payable to her at his death, even though she be insolvent, is not fraudulent as to her creditors.    Cole v. Marple, 98 Ill. 58; Smillie v. Quinn, 90 N. Y. 492; Martin v. Stebbings, 126 Ill. 387.

All the beneficiary has in a life insurance policy, during the life of the policy holder, owing to the right of revocation reserved by the company, is a mere expectancy, dependent upon the will and the acts of the insurer and insured. Martin v. Stebbings, 126 Ill. 387.

This interest is not property and can not be attached or transferred in any way without the consent of both the company and the insured, and neither can the beneficiary be changed without his consent and release, accepted by the company. Cole v. Marple, Smillie v. Quinn, Martin v. Stebbings, *supra;* Pence v. Makepeace, 65 Ind. 358; Johnson et al. v. Van Epps, 14 Brad. 209.

MR. JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

The material question for determination is, as to the act of the appellee in assigning the insurance policy in the Mutual Benefit Insurance Company of New Jersey, to her son and daughter, which had at the time a cash surrender value to her of $1,198.18 over and above the $740 which the company had advanced to her husband thereon, and the surrender for cancellation and exchange of the certificate of membership in the Masonic Pythian Association of Chicago, so that her son and daughter might be made the beneficiaries therein, instead of herself. It is conceded that these transfers were made without any consideration, the effect of which inevitably would be to hinder and delay creditors, if that so transferred was appellee's property, which the creditors were entitled to and could claim for the purpose of applying toward the satisfaction of their debts. While it is true that the fraud, as well as the act, must be proven in order to justify a judgment in attachment *in rem* on the ground of a fraudulent transfer of property (Shove v. Farwell, 9 Brad. 256), yet if a transfer is made without consideration by an insolvent, the fraud may be inferred, as every one is presumed to intend the natural consequences of a voluntary act. It is not a defense to say that it was not known that such property could be made subject to such party's debts, if in fact and law they could be so made sub-

ject. Ignorance of the law is no defense, even where intent is essential to be established to constitute crime, and it is not competent to aver such ignorance. Brown's Legal Maxims, pp. 253, 267.

This case, however, in the arguments of counsel, is made to hinge upon the question as to whether appellee had a *vested* interest in the insurance so transferred on merely an *expectancy*. The policy is in the regular line of insurance, while the certificaté is, as held in the case of Martin v. Stebbings, 126 Ill. 403, in the *nature* of regular mutual life insurance, and therefore, as a contract, is subject to the law of such insurance, except as modified by the objects and policy of such associations.

In the arguments of counsel this distinction between the two evidences of insurance is not noted as being of any consequence. The appellants' counsel broadly asserts that the interest of a beneficiary is vested at once on the issue and delivery of the policy or certificate to the insured, although the contract is between the insured and the company, and claims, as to the regular policy, that when it was assigned to the appellee, she then held the relation to it of a beneficiary, with such vested rights as neither the insured nor the insurer could revoke or destroy without her consent.

The appellee's counsel, on the contrary, asserts that her rights rested merely in expectancy, with the right in the insured—as both contracts were made with him—to revoke and change the beneficiary at his pleasure. It will be observed, from the statement of facts, that the record does not contain any of the by-laws, rules or regulations of either company in regard to the right of the insured to change the beneficiary; that the *regular policy* is not in the record, so that its terms and conditions are not known, and that the *certificate* of membership itself, which is in the record, makes no provision for such change.

In the case of Martin v. Stebbings, 126 Ill. 404, it is held that the beneficiary named in a *certificate of membership*, in a mutual benefit association, acquires no vested right to the

benefit to accrue upon the death of the member until such death occurs, and therefore the member's right to change is only limited *by the restrictions imposed by the association itself*.

True, as a reason, it is suggested that the right of the member to revoke the certificate or surrender the same for cancellation—of which act the wife could not complain—carries with it the right to change the beneficiary (*ibid*. 407).

This ground of the right to change is not merely based, as understood, upon the law of the association giving such right, but upon a common-law right; for it is said (*ibid*. 404), cases where a different rule has been announced seem to be confined to those where the organic law of the society *prohibits* a change in the first beneficiary.

The additional reason, as understood, is also given that the association in the Martin case had expressly reserved in its constitution the right of the member to make such change. But the reason is not understood to be exclusive of or paramount to the other reasons given for so holding.

The right of one making a contract with an insurance company of any kind, insuring his life for the benefit of another, at his own expense, to change the beneficiary by the consent of the insurer, is broadly stated in the case of Johnson et al. v. Van Epps, 14 Brad. 209, and the case of Glanz v. Gloeckler, 104 Ill. 573, is clearly distinguished.

The position there taken as to the effect of the Glanz case is approved by the Supreme Court in the same case, 110 Ill. 558. The able review of the decided cases in the opinion of Johnson et al. v. Van Epps, 14 Brad. 206, *et seq*., upon which the law, as laid down in Bliss and May on Insurance, was based, and of the decisions based upon those works, shows that the origin of the rule of law, that the insured could not change his beneficiary, grew out of special statutes or contracts made between the beneficiary and the insurance company, at least in terms, as in the Glanz case, 104 Ill. That the Supreme Court in the Johnson v. Van Epps case, 110 Ill., was favorably inclined to the rule of law as laid

down by the Appellate Court, is clearly indicated by the language used on page 558 of that opinion. It is there said that this position is supported by many analogies of the law, as well as by express adjudication, it must be conceded, and the cases of Clark v. Durand, 12 Wis. 223, Kennan v. Howard, 23 Wis. 108, Foster v. Gile, 50 Wis. 603, and Gambs v. Mutual Life Insurance Company, 50 Mo. 44, are cited as so holding.

In the cases of Hubbard v. Stapp, 32 Ill. App. 541, and Sauerbier v. Union Central Life Ins. Co., 39 Ill. App. 620, the rule of law contended for by appellants seems to be asserted on authority of the Glanz case in the Appellate and Supreme Courts; Johnson case, 110 Ill. 551; Bank of Washington v. Hume, 128 U. S. 204; Gould v. Emerson, 99 Mass. 154, and Bliss on Insurance. In the Johnson case, 14 Brad. 207-8, these authorities from which emanate this rule are all reviewed except the Hume case in 128 U. S., where, as heretofore suggested, it is clearly shown that they are made to depend upon special statutes or contracts made by and on the part of the beneficiary.

An examination of the Hume case will show it is no exception. The vesting of the interest in the policy in the beneficiary at once on its issue, is there made to depend upon the statutes and charter regulating these insurance companies as to a part of the insurance, and on the fact as to the residue, that the contract was made between the insurance companies and the wife, who was the beneficiary, and the Glanz case, 104 Ill. 573, is there cited. In addition to this, the bill was filed in the Hume case by the Bank of Washington, after the death of Thos. L. Hume, and the interest had actually thereby, in any view, vested in the beneficiary. The purpose of the bill was to reach the fund—which by the death of Hume under the contract, had vested in his wife, who survived him—on the ground that Hume, being insolvent at the time the contracts of insurance were made, a fraud had been perpetrated on the creditors that entitled them to the fund, or at least to the premiums he had paid thereon.

In no view does this case seem to be an authority against the right of an insured person to change the beneficiary during his lifetime, as that question was not involved. In so far, however, as general principles are there discussed, relating to that right, the care with which the statutes of the different States wherein the insurance companies affected were located, as well as the charters of some of such companies, are set out in the opinion, and the conclusions thereon, seem to be in line with the rule of law announced in the Johnson case, 14 Brad. 201.

The Supreme Court of this State, so far as opinions have been announced, has not unequivocally passed upon the question as to the common law right of an insured, who makes the contract in his own name with an insurance company, and thereby obligates himself to pay the premiums or assessments for the benefit of another, to change the beneficiary, with the consent of the company. In the Johnson case, 110 Ill. 558, this rule of law seems to be found, while in the case of Catholic Knights of America v. Franke, 137 Ill. 123, it is said that in such case, in an ordinary life insurance policy, it may be that no valid change can be made without the consent of the beneficiary. Therefore we feel free to pass upon the question according to our views of the law on the subject, from a common-law standpoint. We think the right of property in appellee is not the same in the certificate of membership in the Masonic Pythian Association, as in the Mutual Benefit Life policy. The original purposes of the two corporations were in a distinct sense different.

The object of the former corporation is not for the pecuniary profit of its members insured (Sec. 1, Chap. 73) by an investment of money or otherwise; which is a distinct and an important feature of regular life insurance. Its primary purpose is to furnish cheap insurance for the benefit of those dependent upon the insured, although its benefits may be extended to a class called in said section " devisees or legatees." It is expressly provided that its "members shall receive no money as profit." Its policy, therefore, is not

Conyne, Stone & Co. v. Jones.

commercial, or its object gain, but humane. The words "devisees or legatees" are technically applicable to a will, denoting the person or persons to whom a gift is made.

The central thought is protection for dependents on the insured, as widows, orphans or relatives, against the accidents of life, especially by those of small means.

Practically it is known that this class, as a rule, avail themselves of this kind of life insurance. Its small assessments, though frequent, it is considered brings the advantages of life insurance within their reach, so that they may provide for their families or others dependent upon them.

Therefore the statute and the contract should receive a liberal interpretation in the spirit of the purpose to be accomplished. They should not receive the strict and rigid construction as applied to the law of descent, but rather the free construction as applicable to the law of wills.

The head of the family, or one who has others depending upon him, will as a rule, take out such life insurance, and as he is intrusted in the first instance with the bestowal of his little bounty—knowing best to whom it should go, he also best knows when changes of circumstances, which are continually occurring in almost every family, require a change of his beneficiary. As, for instance, if one child becomes crippled, or its health permanently impaired by disease, after the certificate of insurance is taken out, while the other is healthy and robust, or one child becomes disobedient, wayward, a deserter of his home and a spendthrift, after the insurance is taken out, while the other child or children of the family are obedient, loving and promise to be a joy and support instead of a sorrow and burden to the parents, and such instances are not rare in the best regulated families—should not the one who makes the contract and pays all the consideration have the right to change the beneficiary under such circumstances, if the other party to the contract consents, although such right was not originally reserved? These instances are only given for illustration; many others will suggest themselves where the reasons for change will arise that are equally potent. These sug-

gestions, it is true, are applicable to regular life insurance, and as to it we think the law is, and ought to be, that such change can be made; but the force of them, it seems to us, is accented by the fact that these mutual benefit insurance associations are not for pecuniary profit, as are regular life insurance corporations, and primarily, are not commercial but charitable in their objects and policy.

So far as the naming of a beneficiary is concerned, such a certificate partakes of the nature of a will, and without consideration, like a will, is a mere declaration of a purpose to bestow a bounty which, until death, vests no rights of property in the legatee or beneficiary. Why should it not be so on the principles of the common law? Where the assured makes the contract and pays the premiums or assessments it exists as a contract between him and the insurer alone. If the assured failed or refused to pay the premium or assessment, the beneficiary could not compel the assured by a proceeding in law or equity, to continue the payment, on the ground of an original promise as evidenced by the certificate or policy. Such beneficiary would have no legal ground of complaint of a failure to make such payment, or of the insured's surrender of the certificate or policy for cancellation. Martin v. Stebbings, 126 Ill., at page 407. Such beneficiary could not require the company or association to receive such payment from him to prevent a forfeiture, for the reason there was no contract for payment by such beneficiary. Neither could he pay in the name of the insured, and thereby make himself voluntarily the creditor of the insured. How can the right of property in such a policy be said to *vest* in the beneficiary immediately upon its issue, when the law affords such beneficiary no remedy for its protection from destruction? To destroy a vested right of property in another willfully is to commit a wrong. It is the boast of the common law that there is no wrong without a remedy, and yet the insured in such a policy can surrender it for cancellation without the consent of the beneficiary, or refuse to continue payments, which will work a forfeiture, although thousands of dollars in premiums have been paid.

This is not consistent with the legal idea of a vested right. It comports more nearly with the legal idea of a proposed or unexecuted gift, in which case there is a right of revocation at pleasure.   The fact that the beneficiary has an interest in and the right to insure such life on his own contract, and for his own benefit, does not of itself work any estoppel or afford a consideration as proceeding from the beneficiary. He is left free to insure such life on his own contract, as in the Glanz case.   As is said in the case of Johnson v. Van Epps, 110 Ill., at page 558, the right of an insured under such a contract to change his beneficiary at pleasure, is supported by many analogies of the law, as well as by express adjudications.   We suggest further that the insured ought to have such right, for the reason that to deprive him of it, is to force him to forfeit his policy in order to change his beneficiary, and thereby lose what has been paid, as well as to increase the rate of insurance on a new policy on account of increased age.   He can not be deprived of this right, although it results to the benefit of the insurer, whose profits, in the regular line especially, are largely made up of lapsed policies.   Our conclusion, therefore, is based upon the law and considerations of public policy, that when the contract is made, and consideration paid by the insured for the benefit of another, the beneficiary may be changed by the agreement of the contracting parties, though no reservation therefor was originally made.   The Mutual Benefit Life policy for $3,300 was, as shown by the statement, assigned to Lucinda M. Jones, with the consent of the company, on August 17, 1885, by Gabriel S. Jones, who had, many years before, taken out the policy for his own benefit.   There was this clause in the assignment:  "In the event of her death before the said Gabriel S. Jones, Sr., to revert to him, the said assured, the same as if no assignment had been made." This policy was, by the assignee, Lucinda M. Jones, on the 8th day of March, 1892, assigned, without consideration, to her son and daughter.   On January 26, 1892, this policy had a cash surrender value of $1,191.18.

We think the right of property in this policy was in Lu-

cinda M. Jones, with only the naked legal title in her husband, Gabriel S. Jones. U. S. Life Ins. Co. v. Ludwig, 103 Ill. 305.

The effect of such a transaction was the same as if the policy in the first instance had been taken out by the wife on the life of her husband in a contract made between the company and her personally.

After the assignment was made and assented to by the company, it could not be repudiated by Gabriel S. Jones or the company, but under the assignment the policy was held by Lucinda M. Jones for her sole use and benefit, subject to the limitation in the assignment itself. Cole v. Marple et al., 98 Ill. 58, 66.

This authority is conclusive on this question. The limitation in the assignment gave Gabriel S. Jones no right to revoke the policy or in any way change it during her life. Under the statute on insurance (Sec. 19, Chap. 73, par. 111, Star and C., p. 1345), she had the right to provide in the policy that in case of her death before it became due or before the death of her husband, the amount of the insurance should be payable to his, her or their children, and the provision in the assignment that the husband should have the benefit of the policy in case of her death before his, contravenes no law and is not against public policy. Johnson et al. v. Van Epps, 110 Ill. 562. So this policy, before its last assignment to the children, was the same as if it had provided for the payment of the insurance to her husband in case of her death before his.

Such a provision, however, would not have given him any more control over the policy, or interest in it, than it would the children, if it had been so made payable to them as provided by the statute, on the happening of the event of her death before his. The property in the policy would rest and vest in her, subject to be divested on the happening of a contingent event. The husband would only be a contingent beneficiary and have no present or vested interest in the policy. A policy is property, and in general terms is called a chose in action. U. S. Life Ins. Co. v. Ludwig, 103

Ill. 305. If fraudulently disposed of to defeat creditors, it may be reached by a creditor's bill. Cole v. Marple et al., 98 Ill. 58. It is a fraud within the meaning of the attachment act, to dispose of any kind of property to hinder or delay creditors, that might be used by the creditors to satisfy their debts, if done fraudulently.

A policy of insurance is such kind of property, the same as a note. Ionia Bank v. McLean (Mich.), 48 N. W. Rep. 159.

If the views herein expressed are correct, then the proof sustained the attachment and the court erred in quashing the writ. The judgment is reversed and the cause remanded.