51 So.2d 13

**HAMILTON v. HAMILTON.**

**6 Div. 878.**

Supreme Court of Alabama.

Nov. 16, 1950.

Rehearing Denied March 15, 1951.

Kelvie, Appelbaum, and Clifford Emond, of Birmingham, for appellee.

Hugh A. Locke and F. Raymond Ingram, of Birmingham, for appellant.

**LAWSON, Justice.**

Andrew S. Hamilton and Emma Stokes Hamilton were married in Birmingham, Alabama, on January 19, 1942. He was approximately sixty years of age at the time of the marriage and she was about fifty-five years old at that time. Both of them had been married before. Their spouses were dead. She had no children by her former husband. Mr. Hamilton had one living daughter by his first marriage and two grandchildren. They both owned

some property. Prior to their marriage, they discussed business matters, but such discussion did not culminate in an antenuptial contract.

On May 23, 1944, Mr. and Mrs. Hamilton entered into a postnuptial agreement in the office of Mr. Hamilton's attorney. After this agreement was reduced to writing, it was signed by Mr. and Mrs. Hamilton in the attorney's office. The pertinent provisions of this postnuptial contract or agreement are as follows:

"Agreement by and between
Andrew S. Hamilton and his wife
Emma Stokes McCaskill Hamilton
State of Alabama }
Jefferson County }

"This agreement made in the City of Birmingham, County of Jefferson, State of Alabama, on the 23rd day of May, 1944, between Andrew S. Hamilton, hereinafter referred to as the First Party and his wife Emma Stokes McCaskill Hamilton, hereinafter referred to as the Second Party, Witnesseth:

"Whereas, the said parties hereto are husband and wife at the time of the execution of this agreement are living at 8332 Seventh Terrace, South, in Birmingham, Jefferson County, Alabama; the First Party's grandchildren and the parties hereto have no homestead at the time of the execution of this agreement; that the parties hereto married on the 19th day of January, 1942, and have lived together continuously since said date; that both of the parties hereto have been previously married; and the First Party has one child living, namely, Dessie Hamilton McCrary, and two grandchildren, namely, Marshall Fitzpatrick and Dorothy Fitzpatrick, who are the children of Dessie Hamilton McCrary and her first husband, Marshall H. Fitzpatrick, deceased; that the Second Party has no children living and her only near living relative is her mother, and,

"Whereas, the First Party owns four houses and lots in the city of Birmingham worth in all approximately Fifteen Thousand Dollars ($15,000.), three of them being worth about Seven Thousand Dollars ($7,000.), and the other, the one hereinafter referred to as Lot 1, Block 1, J. L. Thornton's Second Addition to Ridgeway Terrace (Map of Subdivision filed in Map Book 17, Page 42), being worth approximately Eight Thousand Dollars ($8,000.). The First Party also owns Five Thousand Dollars ($5,000.) of paid-up life insurance upon his life with the Penn Mutual Life Insurance Company and Ten Thousand Dollars ($10,000) of life insurance upon his life with the New England Mutual Life Insurance Company, the present or surrender value of the latter being approximately Six Thousand Dollars ($6,000.) and one used automobile which is approximately three years old, several pieces of furniture located in the house where the parties now live, stocks worth approximately Five Hundred Dollars ($500.00) and cash in the bank of not more than One Thousand Dollars ($1000.). The First party owns no other property except personal assets and miscellaneous items worth less than Five Hundred Dollars ($500.00).

"Whereas, the Second Party has a separate estate of her own worth of this date approximately Six Thousand Dollars ($6,-000.00), and,

*"Whereas, the Second Party has become apprehensive lest she be deprived of her rights as a widow of the First Party in the estate of the First Party in the event of his death, and the said First Party desires to show his good faith and to satisfy and comply with her wishes, and together they desire to fix and determine the rights of each of them in any and all property of every nature and description and wheresoever located that the other of them may own, at the death of the First Party, and, particularly to have the First Party agree to make, and make, the second Party agree to accept, and assent to a pecuniary and property settlement and provision for the Second Party's Benefit, in lieu and in bar of any and all right or claim of dower in and to any and all of the First Party's lands, tenements and hereditaments, and, also, in lieu and full discharge and satisfaction of any and all other right, title, and*

*interest in and to any homestead and personal estate that she, as a widow, might have but for such provision and the execution and delivery of this Agreement and the full performance thereof by the First Party:*

"Now, therefore, it is mutually agreed as follows:

"1. (a) That the Second Party shall have, keep, and retain the sole ownership, control, and enjoyment of her separate property during her life and may by last will and testament or by any other testamentary disposition dispose of the same as she may see fit, without interference by or from the First party.

"2. (a) *That the First Party will change the beneficiary named in the four insurance policies, totaling Five Thousand Dollars ($5,000.) hereinafter described and cause the Second Party to be named the beneficiary therein and agrees not to change the beneficiary from the Second Party to any other person, firm, corporation, or to his estate, unless the Second Party predeceases the First Party or ceases to live with the First Party, to the end that the Second Party shall receive the full benefit accruing from said policies upon the death of the insured in the event the First party predeceases the second party and the parties are living together as man and wife.* The description of said insurance policies follows:

\* \* \* \* \* \*

*"The First Party warrants that said Five Thousand Dollars of Insurance is paid up and that there are no liens nor encumbrances against the same.*

"(b) The First Party further agrees to execute a warranty deed conveying to the Second Party the house and lot in which Mrs. Dessie Hamilton McCrary now lives, more particularly described as:

"Lot 1, Block 1, J. L. Thornton's Second Addition to Ridgeway Terrace (Map of Subdivision filed in Map Book 17, Page 42).

"3. (a) The First Party having acceded in full to the demands, desires and wishes of the Second Party in respect to the premises, and the Second Party having been fully advised in the premises the Second Party does hereby assent to the provisions hereinabove made for her benefit and agrees to accept the same in lieu and in bar of any and all right or claim of dower and of any and all claims of homestead rights or interest in and to any and all of the lands, tenements and hereditaments, wheresoever the same may be located, of the first party, to which the Second Party, as his widow, might be, or become, entitled by [sic] for the execution of this instrument; and, also, in lieu and wholly in discharge, satisfaction and payment of any and all other right, claim, title or interest, of any nature or character in and to any and all of his lands, tenements and hereditaments, wherever the same may be located, and, also, of any or all right, claim, title or interest, of any nature or character in and to any and all of his personal estate, wheresoever the same may be situated, to which the Second Party, as the widow of the First Party, might be, or become entitled but for the execution and delivery of this Agreement, and the performance of the covenants herein by the First Party.

"(b) That, in consideration of the covenants of the First Party herein contained, the Second Party, does, for herself, her heirs, executors, administrators and assigns, covenant that, immediately upon the receipt of the warranty deed conveying the said above described house and lot she will execute and deliver any and every instrument, or document, that, in the judgment of counsel for the First Party, or for his heirs, executors, administrators or assigns, may be necessary or any and every such instrument or document that any such counsel may, or shall, request her to execute and deliver, to accomplish and affect a release and waiver of all her right or claims or interest, as aforesaid.

"4. This agreement, shall be, and become effective upon delivery of the deed hereinabove described conveying the above described house and lot to the Second Party and upon the changing of the beneficiary in respect to the four policies of insurance hereinabove described.

"In Witness Whereof, the parties have hereunto set their hands and seals the day and year first above written.

(S) Andrew S. Hamilton
Andrew S. Hamilton—First Party

(S) Emma Stokes McCaskill Hamilton
Emma Stokes McCaskill Hamilton—Second Party

"Witnesses:
(S) F. R. Ingram

(S) Frances Cashatt"
(Emphasis supplied)

Thereafter, on May 31, 1944, Mrs. Hamilton signed the following receipt:

"State of Alabama
Jefferson County

"I do hereby acknowledge that I have this day received a warranty deed conveying the house and lot hereinabove described to me together with the abstract covering said premises and also that I have received the four insurance policies with the beneficiary changed in each to me and I do hereby accept the same as full satisfaction in discharge of any claim for dower and homestead rights and all other claims as hereinabove set out. Executed in Birmingham, Alabama, this 31st day of May, 1944.

(S) Emma Stokes McCaskill Hamilton
Emma Stokes McCaskill Hamilton"

After the four insurance policies carried with the Penn Mutual Insurance Company had been delivered to Mrs. Hamilton, wherein she was made the beneficiary, she turned them over to her husband, with the request that they be placed in a safe-deposit box which they held jointly. He complied with this request.

These parties lived together until on or about August 18, 1945, although they had quarreled intermittently. On or about August 18, 1845, Mr. Hamilton left the home in which they lived and which they had purchased jointly and, after staying in Birmingham a short period of time, went to the home of his brother in Georgia. He made a few trips to Birmingham thereafter, but never did return to see his wife.

On the day he left, that is, August 18, 1945, he went to the local office of the Penn Mutual Insurance Company and made application to obtain the cash surrender value of the four policies. In making this application, Mr. Hamilton necessarily requested that the beneficiary in each of the policies be changed from his wife to his estate. This is a requirement of the insurance company. In the course of events, the Penn Mutual Company honored his application and paid to him the cash surrender value of the policies. It does not appear that the Penn Mutual Insurance Company was notified of the postnuptial agreement or contract entered into between the parties. In any event, the Penn Mutual Insurance Company is not here involved.

This suit was instituted by Mrs. Emma S. Hamilton against her husband, Andrew S. Hamilton, in the circuit court of Jefferson County on August 2, 1946.

There were three counts in the complaint. Count 1 was in detinue to recover the four insurance policies. Count 2 was in trover and alleges a conversion by the defendant of the said four insurance policies. Count 3 is for money had and received by the defendant for the use of the plaintiff. The defendant pleaded the general issue in short by consent in the usual form. The cause was tried before the court without a jury and judgment was rendered in favor of the plaintiff and against the defendant for the sum of $4,503.49, which was the cash surrender value of the policies, plus interest. Defendant's motion for a new trial having been denied, the defendant has appealed to this court.

The finding of the trial court, sitting without a jury, was general. Hence, such finding will be referred to a count which is sufficient and which is supported by the evidence. Evans Bros. Construction Co. v. Steiner Bros., 208 Ala. 306, 94 So. 361.

■ The right of the wife to sue her husband in detinue, trover and general assumpsit is not questioned here. At common law, no such action could be maintained. Actions at law between husband and wife could not be maintained. 41 C.J.S., Husband and Wife, § 393, p. 867; 27 Am.Jur. 183, § 584. They could not contract with each other. 41 C.J.S., Husband and Wife, § 119, p. 592; 26 Am.Jur.

858, § 253. But by statute in this state actions at law between husband and wife can be maintained. § 72, Title 34, Code 1940; Bruce v. Bruce, 95 Ala. 563, 11 So. 197; Johnson v. Johnson, 201 Ala. 41, 77 So. 335, 6 A.L.R. 1031; Penton v. Penton, 223 Ala. 282, 135 So. 481, and cases there cited. The wife has full legal capacity to contract as if she were sole, except as otherwise provided by law. § 71, Title 34, Code 1940. The husband and wife may contract with each other subject to the rules governing contracts between persons standing in confidential relations, but the wife cannot directly or indirectly become the surety for the husband. § 74, Title 34, Code 1940. Under the aforementioned statutes and the decisions of this court construing them, we think it clear that Mrs. Hamilton could sue her husband in detinue, trover, and general assumpsit.

■ As we read and understand the brief of counsel for appellant, this suit is not defended on the ground that the parties were not living together as man and wife at the time the policies were surrendered to the company, or that Mrs. Hamilton had ceased to live with her husband. The evidence in this connection amply supports a finding that Mr. Hamilton left his wife and has never returned, although she wanted him to return to her.

As to the count in trover, the insistence here is that the policies of life insurance were not the subject of conversion in that the wife had no title to the policies at the time they were surrendered for their cash value, nor did she have the right to immediate possession. It is asserted by appellant that under the terms of the contract the wife was not entitled to the policies or the proceeds therefrom unless she outlived her husband and, of course, he was still living at the time of this suit.

■ To be entitled to the right of recovery for conversion, plaintiff must have general or special title to the property in question, and the possession or immediate right of possession; and the party complained against must have wrongfully exerted some act of dominion over such property inconsistent with and destructive

of the title of the party plaintiff. Holman v. Ketchum, 153 Ala. 360, 45 So. 206; Tallassee Falls Mfg. Co. v. First National Bank, 159 Ala. 315, 49 So. 246; First National Bank of Gadsden v. Morgan, 213 Ala. 125, 104 So. 403; Albertville Trading Co. v. Critcher, 216 Ala. 252, 112 So. 907; American Standard Life Ins. Co. v. Johnson, 231 Ala. 94, 163 So. 632.

■ An insurance policy may be the subject of conversion. Commercial Credit Co. v. Eisenhour, 28 Ariz. 112, 236 P. 126, 41 A.L.R. 1274; Hayes v. Massachusetts Mut. Life Ins. Co., 125 Ill. 626, 18 N.E. 322, 327, 1 L.R.A. 303; Mutual Life Ins. Co. v. Allen, 212 Ill. 134, 72 N.E. 200; Fraternal Army v. Evans, 114 Ill. App. 578, affirmed 215 Ill. 629, 74 N.E. 689; Barney v. Dudley, 42 Kan. 212, 21 P. 1079; Woodworth v. Hascall, 59 Neb. 124, 80 N.W. 483; Luckey v. Gannon, 6 Abb.Prac., N.S., N.Y., 209, 37 How. Prac. 134; First National Bank v. Cleland, 36 Tex.Civ.App. 478, 82 S.W. 337.

■ We come to a consideration of the contract between the parties. Antenuptial and postnuptial contracts are scrutinized by the courts because of the confidential relationship of the parties, and certain safeguards have been declared as necessary to protect the interests of the wife or intended wife, under the theory that the husband is the dominant of the two parties. Norrell v. Thompson, 252 Ala. 603, 42 So.2d 461.

■ Unquestionably the wife, the plaintiff below, had the right to the immediate possession of the policies. After the contract was executed and in accordance with his promise, the husband had the plaintiff made the beneficiary in the policies and they were actually delivered to her. This was in accord with the clear intent of the parties as gathered from the contract. The wife acknowledged receipt of the policies in writing. Thereafter, according to her testimony and that of the defendant, she turned the policies over to her husband for the sole purpose of having them placed in their safe-deposit box, which they held jointly and to which they both had access. It was from that box

that the policies were removed when they were surrendered, and such removal was without the approval or knowledge of the wife.

Did the wife have general or special title to the policies, American Standard Life Ins. Co. v. Johnson, supra, at the time of their surrender? We hold that she did have.

If the policy was assigned to the wife, then, of course, she did have title. Not being prohibited by law or public policy, a contract of life insurance, being a chose in action, may before loss be assigned to one having an insurable interest in the life of the insured, without the consent of the insurer, unless the policy contains a stipulation to the contrary, by which the right of assignment is limited. Missouri State Life Ins. Co. v. Robertson Banking Co., 223 Ala. 13, 134 So. 25. The policies are not in evidence; hence, we do not know whether the policies here involved contained any such limiting provisions. But if so, they would have no influence here, for the rights of the insurance company are not here involved and such limitations are solely for the benefit of the company. Missouri State Life Ins. Co. v. Robertson Banking Co., supra; 45 C.J.S., Insurance, § 420, p. 42. An insured may assign a life insurance policy to the named beneficiary and thereby vest in him an irrevocable right to all its benefits. West End Savings Bank v. Goodwin, 223 Ala. 185, 135 So. 161.

But we do not think the contract here involved can be construed to be an absolute assignment. West End Savings Bank v. Goodwin, supra; Tompkins v. Tompkins, 132 N.J.L. 217, 38 A.2d 890; Burton v. Burton, 56 App.Div. 1, 67 N.Y.S. 338. We think it clear that it was not the intention of the parties that if the wife predeceased the husband, those entitled to her property would be entitled to the proceeds of the policies upon the death of the husband.

But a policy of life insurance may be transferred by a qualified or conditioned assignment. In 45 C.J.S., Insurance, § 417, p. 40, the rule is stated as follows: "A policy may be transferred by qualified or conditional assignment, as, for instance, where the right is reserved to name another assignee, or where the assignment is made to an assignee as his interest may appear, or where provision is made for the termination of the assignee's interest on the happening of a designated event and reversion to the assignor. It is not against public policy to make an assignment on condition that the insurance shall revert to the assignor if he survives the assignee."

We think the above rule has application here and hold that the contract between these parties worked a qualified or conditional assignment of the policies to the wife. The effect of such assignment was to vest the title to the policies in the wife, subject to divestment on the happening of a contingent event, the death of the wife prior to that of the husband. Conyne, Stone & Co. v. Jones, 51 Ill. App. 17.

In Conyne, Stone & Co. v. Jones, supra, the appellants had instituted a proceeding in attachment against appellee. On the attachment issue the finding and judgment were in favor of appellee and the attachment was quashed. The appeal was from that judgment. Appellants had contended below that the act of appellee in transferring without condition to her son and daughter certain policies of insurance, held by her as assignee on the life of her husband, was fraudulent. The insurance policies had been assigned to appellee by her husband, who was the insured and, as before indicated, were assigned by her to her son and daughter. The action in the appellate court was made to hang upon the question of whether appellee, the wife, who was the assignee of her husband, had a vested interest in the insurance policies so assigned as would be subject to attachment or merely an expectancy. In the assignment of one of the policies was this clause: "In the event of her death [the wife, assignee] before the said Gabriel S. Jones, Sr. [the husband, insured], to revert to him, the said assured, the same as if no assignment had

been made." As to the effect of this assignment, the Illinois court held as follows:

"We think the right of property in this policy was in Lucinda M. Jones, with only the naked legal title in her husband, Gabriel S. Jones. U. S. Life Ins. Co. v. Ludwig, 103 Ill. 305.

"The effect of such a transaction was the same as if the policy in the first instance had been taken out by the wife on the life of her husband in a contract made between the company and her personally.

"After the assignment was made and assented to by the company, it could not be repudiated by Gabriel S. Jones or the company, but under the assignment the policy was held by Lucinda M. Jones for her sole use and benefit, subject to the limitation in the assignment itself. Cole v. Marple, 98 Ill. 58, 66.

"The authority is conclusive on this question. The limitation in the assignment gave Gabriel S. Jones no right to revoke the policy or in any way change it during her life. Under the statute on insurance (Sec. 19, Chap. 73, par. 111, Star and C., p. 1345), she had the right to provide in the policy that in case of her death before it became due or before the death of her husband, the amount of the insurance should be payable to his, her or their children, and the provision in the assignment that the husband should have the benefit of the policy in case of her death before his, contravenes no law and is not against public policy. Johnson v. Van Epps, 110 Ill. [551], 562. So this policy, before its last assignment to the children, was the same as if it had provided for the payment of the insurance to her husband in case of her death before his. The property in the policy would rest and vest in her, subject to be divested on the happening of a contingent event.

"Such a provision, however, would not have given him any more control over the policy, or interest in it, than it would the children, if it had been so made payable to them as provided by the statute, on the happening of the event of her death before his. The property in the policy would rest and vest in her, subject to be divested on the happening of a contingent event.

The husband would only be a contingent beneficiary and have no present or vested interest in the policy. A policy is property, and in general terms is called a chose in action. U. S. Life Ins. Co. v. Ludwig, 103 Ill. 305. If fraudulently disposed of to defeat creditors, it may be reached by a creditor's bill. Cole v. Marple, 98 Ill. 58. It is a fraud within the meaning of the attachment act, to dispose of any kind of property to hinder or delay creditors, that might be used by the creditors to satisfy their debts, if done fraudulently.

"A policy of insurance is such kind of property, the same as a note. Ionia [County Sav.] Bank v. McLean [84] Mich. [625], 48 N.W. 159.

"If the views herein expressed are correct, then the proof sustained the attachment and the court erred in quashing the writ. The judgment is reversed and the cause remanded." 51 Ill.App. 29–31.

■ The wife, plaintiff below, having title to the property, subject only to divestment upon the happening of a contingency which had not occurred at the time of the surrender of the policies, had sufficient title to authorize recovery for conversion.

We are not here concerned with the amount of damages awarded.

The judgment of the trial court is affirmed.

BROWN, LIVINGSTON, and SIMPSON, JJ., concur.