114 So.2d 907

Bedford GREER

v.

CARL JOHNSON MOTOR CO., Inc., et al.

8 Div. 964.

Supreme Court of Alabama.

Oct. 8, 1959.

Starnes & Starnes, Guntersville, for appellee Johnson Motor Co.

H. Nelson Camp, Huntsville, for appellee Universal C. I. T.

Barnes & Carnes, Albertville, for appellant.

STAKELY, Justice.

The appellant, Bedford Greer, filed his complaint in the Circuit Court of Marshall County against Carl Johnson Motor Com-

pany, Inc., claiming $5,000 as damages for the conversion by the defendant of a 1956 Mercury automobile belonging to the plaintiff. The complaint was later amended to add Universal C. I. T. Credit Corporation as a party defendant and a substituted count was filed claiming against both defendants individually and jointly. Each defendant filed a plea of the general issue. Trial was had on the issues thus framed by the pleadings. At the close of the plaintiff's case the court granted a motion on behalf of Universal C. I. T. Credit Corporation, excluding the evidence as to such defendant and dismissing Universal C. I. T. Credit Corporation as a party defendant. Thereupon after some argument of counsel before the court, the defendant, Carl Johnson Motor Company, rested and the court granted the affirmative charge for such defendant. The jury returned a verdict for the remaining defendant and the court entered judgment thereon. It is from this judgment that the plaintiff has appealed.

The plaintiff Bedford Greer testified substantially as follows: In June 1956 he went to the place of business of the defendant, Carl Johnson Motor Company, Inc., in Guntersville and talked with Mr. Paul Johnson about a deal. The deal was consummated with the result that Bedford Greer bought from Carl Johnson Motor Company a 1956 Mercury automobile. He traded a Ford automobile in on the Mercury. The bill of sale that he received from the motor company was received in evidence as Plaintiff's Exhibit 1. After reciting various details of the transaction, the bill of sale shows that a balance of $3,669.90 of the total purchase price was to be paid through Universal C. I. T. Credit Corporation in thirty payments of $122.33 each. This was in accordance with the agreement between the parties.

Bedford Greer further testified that he was next in the place of business of the motor company the following December 17th. He was having trouble with the Mercumatic drive and took the car back and asked Paul Johnson if "the Mercury people would stand behind it * * *." He was told that they could not give him any definite answer on that and could not tell him how much it would cost to repair it. Bedford Greer then told Paul Johnson in substance that such being the case, he might have to let the car "go back" for he was running low on work. After deciding he would leave the car he hitch-hiked to Albertville but by the time he had gotten that far he had definitely decided not to let it "go back." He called the motor company from Albertville and left word for them not to do anything about his car until they had seen him. He got a friend to drive him back to Guntersville and talked to Mr. Johnson again and told him that he had "definitely decided not to let the car go back." He asked when they could have his car fixed and was told that it would probably be ready Tuesday, the next day. Bedford Greer then stated that he would have his wife pick the car up and asked Mr. Johnson if the defendant finance company would let him pay the interest for that month and "then make the payment up." Mr. Johnson replied, "Lord yes, they will be glad to do it." Bedford Greer further testified that he had to leave for a trip to Baltimore early the following morning and went by the finance company's office but they were not open at that time. He was not back until Saturday. In the meantime his wife had not picked the car up because she was expecting and did not want to do that much driving. Plaintiff lived near Altoona in Etowah County, Alabama. When he returned Bedford Greer immediately went to Guntersville to get his car and the motor company was closed. He called Paul Johnson and according to the testimony of Bedford Greer this conversation was as follows: "I told him I wanted to get my car and he said he swapped my car and I said, 'What did you do a thing like that for?' He said he thought I let the car go back and my wife was supposed to come back and didn't and he said he hadn't seen

C. I. T. and they hadn't said anything." This conversation occurred on December 22, 1956.

The following Monday, Bedford Greer went to the office of the finance company in Gadsden where he told the person apparently in charge that he wanted to make a payment on his car. He handed the person the money and a booklet which was introduced in evidence as Plaintiff's Exhibit 2. This booklet consisted of a cover and 27 pages each of which were identical except that the pages were numbered. The first page in the booklet at the time it was introduced in evidence was number 7 and each page thereafter was numbered consecutively through 30. This document had been received through the mail by Bedford Greer from the finance company soon after his purchase of the Mercury automobile. On the inside front cover of this document appeared the following:

"This is your record-of-payment book. The coupons—one for each installment—tell you when each payment is due and how much it is. You will find it helpful to record payments, as you make them, on the inside back cover. In paying by mail, simply fill in the proper coupon and send it to us with your money order or check (which becomes your receipt). If you decide to make two payments send two coupons, etc. Do not mail the book or cash.

"In paying in person at our office, however, please bring this book with you.

"Prompt payments safeguard your credit and eliminate penalty charges.

Be sure they reach us on or before the dates indicated on the coupons.

"Please notify us promptly of any change of address."

Bedford Greer was given a receipt for his money. This instrument became Plaintiff's Exhibit 4 and showed that the payment for December 16, 1956, was received on December 24, 1956. The person receiving the payment then tore out page 5 and filled out page number 6 in Plaintiff's Exhibit 2, which had become detached sometime prior to trial. This became Plaintiff's Exhibit 3 and states that plaintiff's next payment was due January 16, 1957.

The record on the inside back cover of the booklet showed that Bedford Greer had made five payments on the Mercury automobile of $122.33 each, ending with the payment made on December 24, 1956.

Bedford Greer testified that he again went to the credit company's office on January 4, 1957 and was accompanied by one J. J. Elrod. The plaintiff further testified that the credit company refused to accept a payment because the plaintiff and Mr. Johnson were tied up in a lawsuit about the car and the credit company did not want to get involved in it. The plaintiff stated that the credit company told him that his credit was perfect with them.

Bedford Greer testified that on the same day, January 4, 1957, he went to Carl Johnson Motor Company and the motor company was closed. Upon this trip J. J. Elrod, who accompanied him, called Paul Johnson on the telephone.

Bedford Greer testified that the car in question was worth $3,700 or $3,800.

On cross-examination the plaintiff stated that he did not recall receiving a copy of a conditional sales contract. Plaintiff testified that his wife had made the entries in the back of the payment coupon book. He testified that he swapped the Ford in and at the time he swapped it in he still owed $2,000 on it. The plaintiff further testified that to his knowledge he never received notice from the finance company that he was delinquent in his payments.

Bedford Greer testified that when he brought the car in for repairs he asked Paul Johnson if C. I. T. would let him pay the interest for that month and then put the

payment off and make it up before the car was paid out.

Plaintiff testified that he consulted Jack Floyd, an attorney, on December 23, 1956.

Plaintiff testified that he had a conversation with Paul Johnson by telephone and Mr. Johnson told him that, "If you want the car back I will see if I can get it back." Greer further testified that his attorney, Mr. Floyd, mentioned to him that the car was tendered to him, Floyd, as the attorney for Bedford Greer, provided the balance due on the car of $2,845.95 was first paid on January 3, 1957, and that he refused to accept the car.

Defendant introduced a conditional sales contract which is set out in the record.

The contract between Carl Johnson Motor Company (seller) and Bedford Greer (customer) was for the sale of a 1956 Mercury automobile. The contract retained title in the seller or in Universal Credit Corporation, if assigned to it, until the balance on the car was fully paid. The contract had been assigned by Carl Johnson Motor Company to Universal C. I. T. Credit Corporation without recourse. The date of the assignment was July 16, 1956. The assignment transferred title from the Carl Johnson Motor Company to Universal C. I. T. Credit Corporation.

On redirect examination the plaintiff testified that he had never received a copy of this conditional sales contract.

J. J. Elrod was called to the stand to testify in behalf of the plaintiff. The purpose of the testimony was stated to be to show a conversation on January 4, 1957, in which the Universal C. I. T. Credit Corporation ratified and adopted the action of the motor company in selling the car. Not only do we doubt that the conversation, as stated, would show such adoption and ratification, but the car had previously been sold. This testimony was objected to by the defendants on the ground that the line of questioning was not relevant to the issue.

The court sustained the objection. There was no error here.

In Geneva Gin & Storage Co. v. Rawls, 240 Ala. 320, 199 So. 734, 735, this court said:

"* * * A 'conversion, in the sense of the law of trover, consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in the destruction, or in exercising of dominion over it, in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff, under a claim of title inconsistent with his own.' * * *."

In Hamilton v. Hamilton, 255 Ala. 284, 51 So.2d 13, 18, this court also said:

"To be entitled to the right of recovery for conversion, plaintiff must have general or special title to the property in question, and the possssion or immediate right of possession; and the party complained against must have wrongfully exerted some act of dominion over such property inconsistent with and destructive of the title of the party plaintiff. * * *."

The Carl Johnson Motor Company is a corporation engaged in the business of buying and selling automobiles in the City of Guntersville, Alabama. Universal C. I. T. Credit Corporation is a financial institution and is engaged in buying and selling conditional sales contracts from automobile dealers.

On June 16, 1956, the motor company sold to Bedford Greer a 1956 Mercury automobile and as a part of the consideration therefor accepted a 1956 Ford automobile as a partial payment on which there was a mortgage of approximately $2,000. Bedford Greer signed an automobile sales contract. The contract called for monthly installments to be paid by Bedford Greer in the amount of $122.33, the first of such notes falling due on July 16, 1956. We set out the due dates of the aforesaid payments

and the actual dates on which Bedford Greer made payments:

| Due Date | Date Actually Paid |
| --- | --- |
| July 16, 1956 | August 3, 1956 |
| August 16, 1956 | September 7, 1956 |
| September 16, 1956 | October 13, 1956 |
| October 16, 1956 | November 9, 1956 |
| November 16, 1956 | December 24, 1956 |
| December 16, 1956 | None |
| January 16, 1956 | None. |

■ While there was an effort on the part of Bedford Greer to show that there was an agreement between the parties extending the time for 30 days for the payment of installments due under the contract, we doubt that the evidence tends to establish such agreement. On December 17, 1956, Bedford Greer took the Mercury automobile to the Carl Johnson Motor Company and at that time the contract was two payments in default, the payment of November 16, 1956 and the payment of December 16, 1956. But in the event the time for payment was extended for 30 days, the contract was still in default.

Bedford Greer told Paul Johnson, the manager of the Carl Johnson Motor Company, that the automobile needed repairs and that it might be that he could not make any more installment payments on the pur-:chase price, so he turned over possession of the car to the motor company, but on his way back home he stated that he had changed his mind and went back and told Paul Johnson that his wife would pick up the car on the next day, which was December 18, 1956. His wife failed to pick up the car. In the foregoing conversation he was told by Paul Johnson that Bedford Greer would have to make any change in the conditional sales contract with Universal C. I. T. Credit Corporation in Gadsden. We think the record shows that Bedford Greer failed to discuss this with anyone at Universal C. I. T. Corporation concerning his payments until after January 3, 1957.

On December 22, 1956, Bedford Greer called Paul Johnson at his home after business hours and demanded the car. At that time Paul Johnson told him that the car had been sold that day but that he would try to get it back for him. On December 24, 1956, Bedford Greer made an installment payment to the Universal C. I. T. Credit Corporation in Gadsden, at which time there were two installments in default. After paying the installment on December 24, 1956, Bedford Greer was still in default for the payment due on December 16, 1956.

■ On the day Bedford Greer signed the conditional sales contract with the Johnson Motor Company, the Johnson Motor Company assigned the contract to Universal C. I. T. Credit Corporation without recourse. While there was some effort on the part of Bedford Greer to show that the Universal C. I. T. Credit Corporation subsequently adopted the action of the Johnson Motor Company, we think that the proof fails in this regard and that the Universal C. I. T. Credit Corporation was clearly entitled to have the case dismissed against it. In this respect we find no error.

■ After the conditional sales contract had been assigned by the Carl Johnson Motor Company to the Universal C. I. T. Credit Corporation, the Carl Johnson Motor Company had no title to the car nor right of possession of the car. The conditional sales contract was never reassigned by the finance company to the motor car company. And accordingly as we understand the record, the court was in error in granting the affirmative charge in favor of the Carl Johnson Motor Company. The Carl Johnson Motor Company had no right to sell the car. Jeffrey v. Williams, 38 Ala.App. 430, 85 So.2d 896. For this error the case is reversed and the cause is remanded to the trial court.

Affirmed in part and in part reversed and remanded.

LAWSON, GOODWYN, MERRILL and COLEMAN, JJ., concur.