PAUL, Retired Circuit Judge.[1]
This appeal concerns the propriety of directed verdicts in favor of defendants-ap-pellees on certain counts of plaintiff-appellant’s complaint as amended.
Plaintiff Tommy Wells purchased a 1972 Plymouth Sport Suburban station wagon from defendant Robertson Chrysler Plymouth in Ft. Payne. Robertson assigned its security interest in the automobile to defendant Central Bank of Alabama. Wells defaulted on payments. Central peaceably repossessed the auto and returned it to Robertson. Robertson sold the car at a private sale.
Plaintiff filed a complaint against Robertson and Central on July 14, 1975, and alleged (1) violation of the notice requirements of Tit. 7A, § 9-504, Code of Alabama (1940) (Recomp.1958) which entitled him to damages under § 9-507; (2) conversion; and (3) breach of contract. For the purposes of this appeal it is not necessary to discuss the other theories for recovery.
Robertson answered with a general denial and offered judgment for $558.21. Central answered with a general denial. Robertson moved for a more definite statement of plaintiff’s claims.
Plaintiff amended his complaint by adding counts One(A) through Six(A). These counts were similar to the first six, the only difference being that count One(A) applied to both defendants (the violation of the notice requirement of § 9-504), while counts Two(A) through Six(A) applied only to Robertson. After the amendment Central reasserted its original answer. Robertson amended a cross-claim (not appearing in the record) to a third party complaint seeking recovery from Central for any sums for which it was found liable.
’ The case proceeded to trial before a jury. At the close of plaintiff’s case the court granted directed verdicts in favor of Central on all counts and in favor of Robertson on all counts except One(A). At the close of all the evidence the court granted plaintiff’s motion for a directed verdict against Robertson on the issue of liability. On its own motion the court directed verdict for plaintiff in the amount of $1,154.
Plaintiff’s motions for new trial were denied by the court. Plaintiff appeals.
Plaintiff contends the court erred in directing verdict in favor of Central on counts One, Two, Four and Five and in favor of Robertson on counts Two(A), Four(A) and Five(A).
Where a directed verdict is requested, the entire evidence must be viewed in a light favorable to the opposing party. Kilcrease v. Harris, 288 Ala. 245, 259 So.2d 797 (1972). The directed verdict should be refused where the evidence is in conflict as to any material issue or where from the evidence reasonable inferences may be drawn to substantiate the claimed culpability of the defendant. Birmingham Elec. Co. v. McQueen, 253 Ala. 395, 44 So.2d 598 (1950); Baker v. Patterson, 171 Ala. 88, 55 *117 So. 135 (1911). The case must go to the jury if the evidence or the reasonable inferences arising therefrom furnish a mere gleam, glimmer, spark, the least particle, the smallest trace, a scintilla in support of the theory of defendant’s liability. Louis Pizitz Dry Goods Co. v. Harris, 270 Ala. 390, 118 So.2d 727 (1960); Northam v. Metropolitan Life Ins. Co., 231 Ala. 105, 163 So. 635 (1935); McGahey v. Albritton, 214 Ala. 279, 107 So. 751 (1926); Rule 50(e), ARCP.
Viewed most favorably to plaintiff the evidence was as follows: On October 28, 1972, plaintiff purchased the station wagon from Robertson. The cash price was $5,468.92. After trade-in and down payment the balance due was $3,200. With credit life and recording fees this came to $3,321.58. The finance charge was $597.38. Plaintiff was to make payments of $108.86 for 36 months. Wells was in default on two payments with a third four days overdue when Jimmy Hyatt, an employee of Central at its Scottsboro branch, peaceably repossessed the car in Chattanooga on June 9, 1975. Wells requested Hyatt to hold the auto 10 days to permit him to redeem it, and Hyatt, for Central, told Wells that it would be held 10 days to allow him to redeem the car by paying the balance in cash. That same day Hyatt took the car to Robertson’s place of business and told Mr. Robertson to hold the car 10 days, that Wells said he would probably be down in the next 2 or 3 days and pick it up. Hyatt testified that Robertson replied to him that if he got a good offer on it he would not hold the car. (After plaintiff had rested his case and the court granted the direct verdict, Robertson in his defense denied this and testified that Hyatt told him Wells was not going to make another payment and they should sell the car if they got a good offer.)
Also, on June 9 a letter, designated a notice of sale, was prepared by Central’s Repossession Supervisor, Billy Edwards, with address of the sender showing “Huntsville, Alabama.” This notice indicated the auto would be sold by Central “after 5:00 P. M. on June 19, 1975, and from day to day thereafter until sold.” The notice further stated, “You may redeem said property at any time before it is sold.” No indication was given in the notice of where the sale would take place. The letter was mailed from Huntsville on June 12 by certified mail with return receipt requested. Wells received the letter on Saturday, June 14.
Central, by letter of June 9 to Robertson, indicated the balance due on the vehicle was $1,304.48. The balance was due July 9 or immediately if the auto were resold before then.
On June 14 Robertson sold the station wagon to Mid Allen for $2,256. Certain repairs had been performed on the car at a cost of $84.58. Preparation and clean-up prior to sale amounted to $100. By a check dated June 14 Robertson paid $1,304.48 to Central.
Wells attempted to contact Central by telephone on June 14 but received no answer. He called again on Monday, June 16 and was told he would be required to pay $1,304.48 to redeem the car. Mrs. Wells also called to find out where to pay the balance due and was informed Robertson had the car. Mr. Wells borrowed the money and with some friends went to Ft. Payne on Tuesday, June 17. Mr. Wells offered the sum to Central Bank in Ft. Payne but Central’s employee refused to accept it. He then went to Robertson’s place of business and made the same offer to Ed Robertson who said he had already sold the car and there was nothing he could do. Wells left without making any further demand and without asking whether any further expenses had been incurred. Robertson did not advise him of any further expense.
Billy .Edwards testified the standard practice was to allow a debtor 10 days to redeem a repossessed vehicle. He further stated that he had told Mr. Wells by telephone that he could redeem by paying at any branch of Central. Central gave Robertson no written instructions to hold the auto until June 19.
During the period that the Wells were without a car, they used a vehicle owned by Mrs. Wells’ father and leased a vehicle in *118 early July for $100.89 when that vehicle was unavailable.
In answer to plaintiff’s interrogatory, Central stated the NADA retail price for an automobile like plaintiff’s was $2,175 in June of 1975.
Robertson in presenting its defense stated by witness Ed Robertson that Central would normally hold the car itself for 10 days and bring it to him only when it was ready to be sold. He testified the normal custom and practice was for Central to bring a release from the debtor waiving the right to redeem but it had not done so this time. When the car was brought to him on June 9, Robertson did not inquire whether the 10-day period had expired. Robertson paid $558.21 into court as the amount realized on the sale to Allen less the balance due Central, repair and clean-up expenses and a 25% sales commission. He stated he had unsuccessfully attempted to get the auto back from Allen.
Plaintiff’s first issue is whether the trial court erred in directing a verdict in favor of Central on Count One, based on breach of a statutory duty. After stating certain un-contradicted facts, plaintiff alleges the following in Count One:
“3. The Defendants, acting individually and in concert, did not proceed in accordance with the provisions of Title 7A, Sections 9-101, et seq., Code of Alabama, 1940 (Recomp.1958), in that they did not, after repossession by the seller of the vehicle from the buyer, sell the vehicle in accordance with the requirements of the applicable law, and in addition thereto, did not give five days notice to the buyer of such sale.
“WHEREFORE, Plaintiff demands judgment against Defendants as provided in Title 7A, Section 9-507, Code of Alabama, 1940 (Recomp.1958), for all damages, both compensatory and punitive, that occurred as a proximate result of the above violation of statutory law, including but not limited to, loss of use, loss of benefit of bargain, attorneys fees, interest, and Court costs.”
Tit. 7A, § 9-504(3) states:
“(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.”
Tit. 7A, § 9-506 states:
“Debtor’s right to redeem collateral.— At any time before the secured party has disposed of collateral or entered into a contract for its disposition under section 9-504 or before the obligation has been discharged under section 9-505(2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys’ fees and legal expenses.”
Tit. 7A, § 9-507(1) states:
*119 “If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price.”
Robertson had a purchase money security interest in the vehicle. Under a dealer’s agreement it assigned its security interest to Central. Thus Central was the secured party at the time of default, repossession and resale under the terms of the security agreement.
There is nothing to indicate that Central is required to send notice of sale to Robertson. Tit. 7A, § 9-504(3). But in Norton v. National Bank of Commerce, 240 Ark. 143, 398 S.W.2d 538, 3 UCC Rep.Serv. 119 (1966), the court held an auto dealer was entitled to notice as a debtor under § 9-504(3) when the assignee bank repossessed and sold without giving the dealer an opportunity to repurchase. We cannot say as a matter of law that Central did not violate the notification section by failing to inform Robertson of the time of sale. Under the issues presented on this appeal that question appears not to be before us.
Notice given after the time of the sale or when there is no time to redeem the collateral prior to the sale is insufficient. Prairie Vista, Inc. v. Casella, 12 Ill.App.3d 34, 297 N.E.2d 385, 13 UCC Rep.Serv. 157 (1973); Conti Causeway Ford v. Jarossy, 114 N.J.Super. 382, 276 A.2d 402, 8 UCC Rep.Serv. 1348 (1971), aff’d, 118 N.J.Super. 521, 288 A.2d 872 (1972). The notice here, received on the same day as the actual sale, was clearly deficient. The jury could have found from the evidence presented that the sale was thus not made in a commercially reasonable manner and found Central liable.
The jury could also have found that Central violated Tit. 7A, § 9-506 when it refused to permit Wells to redeem the collateral.
The jury further could have found from the evidence that Central adopted the actions of Robertson by accepting the check in payment of the balance due. In a similar situation in Greer v. Carl Johnson Motor Co., 269 Ala. 617, 114 So.2d 907 (1959), the debtor failed to carry his burden of proof that the assignee had adopted the actions of the dealer. However, the facts before the court in Greer are clearly distinguishable from the facts here.under consideration.
Further, the jury could have found a connection between Robertson and Central in their prior course of dealing and their performance in this instance to demonstrate a community of action and interest which would hold both liable.
There is at least a scintilla of evidence to support plaintiffs Count One against Central. By violating one or more of the provisions of Part 5 of Article 9 it is liable for the damages assessed under § 9-507(1).
The cases conflict as to which party has the burden of proving commercial reasonableness when the debtor is seeking damages for failure to proceed pursuant to the Uniform Commercial Code. Most appear to place the burden on the creditor because he has greater access to the facts surrounding the sale, especially where it was without adequate notice to the debtor. Annot., 59 A.L.R.3d 369; Investors Acceptance Co. of Livingston, Inc. v. James Talcott, Inc., 61 Tenn.App. 307, 454 S.W.2d 130, 7 UCC Rep.Serv. 1239 (1969). Contra, Transport Equipment Co. v. Guaranty State Bank, 518 F.2d 377 (10th Cir. 1975); 17 UCC Rep.Serv. 1; Anderson on the Uniform Commercial Code § 9-504:13.1. Commercial reasonableness is a question for the jury. Ennis v. Atlas Finance Co., 120 Ga.App. 849, 172 S.E.2d 482, 7 UCC Rep.Serv. *120 399 (1969). Under the allegations here in question the burden of proof was on the plaintiff.
We find the trial court erred in taking consideration of the commercial reasonableness of the actions of Central away from the jury.
In his second issue Wells contends error in the granting of a directed verdict on count Two based on conversion in favor of Central. In his fourth issue he contends error in the granting of a directed verdict on count Two(A) based on conversion in favor of Robertson. We shall discuss these issues together.
Conversion consists of the exercise of dominion over property in exclusion of or in defiance of plaintiffs rights. Russell-Vaughn Ford, Inc. v. Rouse, 281 Ala. 567, 206 So.2d 371 (1968); Hamilton v. Hamilton, 255 Ala. 284, 51 So.2d 13 (1951). The plaintiff must have general or special title to the property and possession or the immediate right to possession. Jones v. Americar, Inc., 283 Ala. 638, 219 So.2d 893 (1969); State Farm Mut. Auto. Ins. Co. v. Wagnon, 53 Ala.App. 712, 304 So.2d 216 (1974).
The sale of the auto here is proof of conversion. Kyle v. Gray, 11 Ala. 233 (1847); Richard Kelley Chevrolet, Inc. v. Williams, 343 So.2d 776 (Ala.Civ.App.1977). Some cases have indicated that where the creditor has a right to repossess because of the debtor’s default, the debtor cannot maintain a claim for conversion because he has no legal right to possession. Automotive Acceptance Corp. v. Powell, 45 Ala.App. 596, 234 So.2d 593 (1970); William Iselin & Co. v. Burgess & Leigh, Ltd., 52 Misc.2d 821, 276 N.Y.S.2d 659, 3 UCC Rep. Serv. 1168 (1967). But the debtor is not completely divested of all right and interest in the auto by default, neither is the creditor vested with full power to do with the auto as wished. State v. Weber, 76 N.M. 636, 417 P.2d 444, 3 UCC Rep.Serv. 907 (1966); In re Trans National Communications, Inc., 11 UCC Rep.Serv. 238, Bankruptcy No. 71-B-313 (S.D.N.Y.1972); Anderson, § 9-501:7. Here the debtor still had a right to redeem under § 9-506. In fact a tender under the circumstances was a vain and useless thing. Owens v. Automobile Recovery Bureau, Inc., 544 S.W.2d 26, 20 UCC Rep.Serv. 820 (Mo.App.1977).
Defendants were not entitled to dispose of the car without proper notice. The purpose of the notice is to enable the debtor to protect his interest in the property by paying the debt, finding a buyer, being present at the sale to bid on the property or have others do so, in order to keep from sacrificing the collateral at a secret sale at less than its true value. Mallicoat v. Volunteer Finance & Loan Corp., 57 Tenn.App. 106, 415 S.W.2d 347, 3 UCC Rep.Serv. 1035 (1966); Skeels v. Universal C.I.T. Credit Corp., 222 F.Supp. 696, 1 UCC Rep.Serv. 639 (W.D.Pa.1963), modified, 335 F.2d 846, 2 UCC Rep.Serv. 256 (3d Cir. 1964). Plaintiff had a right to redeem. A sale after improper notice would be an improper sale. The improper sale of repossessed property may be conversion. Davidson v. First Bank & Trust Co., 559 P.2d 1228 (Okl.1976), 20 UCC Rep.Serv. 562. Unlawfully failing to permit redemption is also conversion. Owens v. Automobile Recovery Bureau, Inc., supra.
Under the evidence presented there was a scintilla to indicate conversion. The question of conversion should have gone to the jury. We feel the statements we have previously made regarding Central’s participation require that Count Two also be allowed to go to the jury.
It is not inconsistent to pursue the statutory remedy and a conversion claim also (although one is entitled to only one recovery). Charley v. Rico Motor Co., 82 N.M. 290, 480 P.2d 404, 8 UCC Rep.Serv. 683 (1971) (conversion under § 9-505(1) where debtor paid over 60% of purchase price); Crosby v. Basin Motor Co., 83 N.M. 77, 488 P.2d 127, 9 UCC Rep.Serv. 555 (1971). See also Tit. 7A, § 1-106(1).
Plaintiff next contends error in directing verdict on the breach of contract counts — in favor of Central on Counts Four and Five (issue three) and in favor of Rob *121 ertson on Counts Four(A) and Five(A) (issue five).
The security agreement states:
“Upon repossession the Seller may sell the vehicle in accordance with the requirements of applicable law whereupon the Buyer agrees to pay any deficiency on demand. At least five (5) days notice to Buyer of such sale shall constitute reasonable notice.”
We are of the opinion that Counts Four, Four(A), Five and Five(A) were supported by a scintilla of evidence and that the motions for directed verdicts in favor of each defendant should have been denied. It would appear that each of said four counts is but an alternative averment of failure to comply with the provisions of the Uniform Commercial Code as was alleged in Count One(A).
We find that the trial court erred in granting directed verdicts on Counts One, Two, Four and Five in favor of Central, and on Counts Two(A), Four(A), and Five(A) in favor of Robertson. We reverse and remand for a new trial based on the theories presented in those counts, as well as Count One(A) under which the plaintiff recovered judgment against Robertson. There can be but one recovery. In the event of another trial, if plaintiff fails to elect between inconsistent remedies at some time prior to judgment, each count may be submitted to the jury for determination on the evidence.
REVERSED AND REMANDED.
BRADLEY and HOLMES, JJ., concur.

. Sitting by order of the Chief Justice pursuant to § 6.10 of the Judicial Article, Amendment No. 328 of the Constitution.