EARTHMOVERS, INC., Appellee,

v.

CLARENCE L. BOYD COMPANY, INC.,
Appellant.

No. 48818.

Court of Appeals of Oklahoma,
Division No. 1.

June 8, 1976.

Rehearing Denied July 6, 1976.

Certiorari Denied Sept. 20, 1976.

Released for Publication by Order of Court of
Appeals Sept. 23, 1976.

Woodliff & Hutton by Duane A. Woodliff, Henryetta, for appellee.

Kornfeld, McMillin, Phillips & Upp by Joe E. Edwards, Oklahoma City, for appellant.

. BOX, Judge:

An appeal by Clarence L. Boyd Co., Inc., defendant in the trial court, from a judg-. ment in favor of Earthmovers, Inc., in an action instituted by the latter to quiet title to certain personal property.

A mechanic obtained a statutory possessory lien on encumbered property, foreclosed the lien by public sale over the objections of the secured creditor, and itself purchased the property. It then brought an action against the secured creditor to quiet title to the property and the latter counterclaimed for possession. The question is whether the purchaser at a lien foreclosure sale, held in accordance with the provisions of 42 O.S.Supp. 1975, § 91, acquires title free and clear of a security interest which had been duly perfected long before the statutory lien attached. We hold that he does and accordingly affirm the judgment below.

I.

On March 4, 1974, Oklahoma Acceptance Corporation executed a note in favor of Clarence L. Boyd, Inc. (Boyd), for the amount of $14,365.00. At the same time Oklahoma Acceptance Corporation also gave Boyd a security interest in its used bulldozer. Shortly thereafter, Boyd perfected its security interest by filing.

Later the same year, on September 4, 1974, Oklahoma Acceptance Corporation retained the appellant Earthmovers, Inc., to extricate the bulldozer from a pond near Okemah, tow it to its service center in Henryetta and repair and restore it. Earthmovers made extensive repairs to the

bulldozer and replaced numerous parts—and compiled in the process a service charge totaling $2,257.73. When Oklahoma Acceptance Corporation failed to pay the bill Earthmovers asserted a special possessory lien under the provisions of 42 O.S.Supp.1975, § 91.

Earthmovers followed the notice procedure provided in Section 91, notifying both the debtor and Boyd (the secured creditor) and held a public sale to foreclose its lien. Although an agent for Boyd was present at the auction, the only bidder was an agent for Earthmovers and Earthmovers thus became its own purchaser. The sale price exceeded Earthmovers' lien and the expenses of the sale by $192.27. This amount was tendered to Boyd but was rejected on the ground that its security interest was not terminated by the foreclosure and that Earthmovers had merely bought a bulldozer subject to a perfected security interest. When Boyd did not relinquish its claim to possession of the bulldozer Earthmovers brought this action to quiet the title it had obtained at the foreclosure sale. Boyd counterclaimed for possession of the bulldozer.

The case was submitted to the trial court on an agreed statement of facts and the court ruled that Earthmovers had acquired title to the bulldozer free and clear of the security interest. Accordingly, the trial court ordered Boyd to file a release of its security interest and to relinquish all claim to the bulldozer. Boyd has appealed from this judgment.

Boyd does not question either the validity of Earthmovers' lien or the regularity of the foreclosure sale. The only question raised by Boyd's appeal is whether Earthmovers could acquire title free and clear of Boyd's prior perfected security interest by means of purchasing the collateral at a non-judicial foreclosure sale conducted in accordance with the provisions of 42 O.S. Supp. 1975, § 91. Relying upon Section 9–311 of the Uniform Commercial Code,

12A O.S. 1971, § 9–311, Boyd urges that a foreclosure sale for the purpose of foreclosing a statutory lien operates merely to transfer the debtor's interest in the collateral and does not affect a security interest which had been perfected prior to the time the lien attached. Earthmovers, on the other hand, argues that Code Section 9–310 gave its statutory lien priority over Boyd's security interest by operation of law and that it was accordingly entitled to sell the property free and clear of the security interest. We turn to consider the merits of these contentions in detail.

II.

As we have noted, the lien at issue here was a special possessory lien provided by 42 O.S.Supp. 1975, § 91. Boyd admits the validity of this lien and acknowledges that it comes within the ambit of those common law or statutory artisans liens assured protection by the provisions of Code Section 9–310. The Code Section provides as follows:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, *a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest* unless the lien is statutory and the statute expressly provides otherwise." (Emphasis supplied.)

█ It is not now subject to question that a serviceman or materialman who obtains a special possessory lien under 42 O.S.Supp. 1975, § 91 acquires under Section 9–310 priority over a secured creditor's previously perfected security interest. *Commerce Acceptance of Oklahoma City, Inc. v. Press,* 428 P.2d 213. In *Commerce Acceptance* the Supreme Court specifically held that a garageman who had acquired a lien under 42 O.S. 1971, § 91 for towing, repairing and storing an automobile, had priority over a creditor's chattel mortgage.

The inevitable consequence of Earthmovers' priority over Boyd's security interest was that it was entitled to foreclose in the manner provided by the lien statute and obtain full satisfaction before the subordinate party, Boyd, was satisfied to any extent. Moreover, it seems quite obvious that if Earthmovers complied with all the requirements for foreclosure under 42 O.S.Supp. 1975, § 91—and Boyd concedes that it did—its sale to any purchaser, including itself, completely discharged its statutory lien and Boyd's subordinate security interest. Compare cases collected in Annot., 30 A.L.R.3d 9, 89–92 (1970).

How, then, can Boyd contend that its security interest somehow survived foreclosure and remained attached to the bulldozer? It relies upon the provisions of Code Section 9–311, which provides as follows:

"The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default, but the interest so transferred is subject to the creditor's security interest if it is properly perfected, and nothing stated herein shall be construed to be inconsistent with 21 O.S. § 1834."

We fail to see how Section 9–311 could possibly have any application to a statutory lien given priority by Section 9–310. We agree with Boyd's contention that Section 9–311 was designed to prevent the voluntary (as by sale, gift, or creation of another security interest) or involuntary (by attachment, levy or garnishment) disposition of the *debtors* rights or equity in the collateral and, at the same time, to protect the secured creditor's interest by insuring that any sale of the collateral will be subject to the security interest. See generally R. Anderson, Uniform Commercial Code § 9–311 (1971); R. Henson, Secured Transactions §§ 5–16, 5–17 (1973); Justice, *Secured Parties and Judgment Creditors—The Courts and Section 9–311 of the Uniform Commercial Code,* 30 Business Law 433 (1975). Thus if a judgment creditor had levied against the bulldozer he would have been able to obtain satisfaction only from the debtor's equity. See, e.g., Op. Att'y Gen. Okla. No. 66–245, 3 U.C.C. Rep.Serv. 1004 (1966).

Section 9–311 does not, however, deal either expressly or by implication with statutory liens. Indeed, Section 9–310 is the only place in Article Nine where statutory liens are given any treatment at all. This is because Article Nine was designed to apply primarily to consensual security interests. 12A O.S. 1971, § 9–104. See generally J. White and R. Summers, Uniform Commercial Code, § 22–2 (1972). The general scheme of Article Nine is therefore at odds with any notion that Section 9–311 has any application to statutory liens. Moreover, if a court was to construe that Section as applying to statutory liens, thus ensuring that a foreclosure of an artisan's lien would not discharge a previously perfected security interest, it would in effect be writing Section 9–310 out of the Code.

Section 9–310 was designed to give the serviceman or materialman priority for work done for the encumbered property. See e.g., *Commercial Acceptance of Oklahoma City v. Press,* supra. It is not hard to discern why such a provision was deemed desirable. The artisan's work will enhance or at least preserve the value of the collateral and since the secured creditor as well as the debtor benefits from such work it seems only fair that the artisan be paid before the secured creditor obtains satisfaction. See generally Note, *Nonconsensual Liens Under Article 9,* 76 Yale L.J. 1649 (1967). The secured credi-

tor, it should be noted, is not unduly prejudiced by allowing the statutory lienor priority. He has the option of paying the artisan's claim or appearing at the foreclosure, as did Boyd in the instant case, and protecting his interest by bidding. Certainly the only construction of these two code sections which is consonant with the intent of the draftsmen is that Section 9–311 is wholly inapplicable to the foreclosure of a statutory lien.

Accordingly, we agree with the trial court's conclusion that the foreclosure sale discharged Boyd's security interest. Boyd was however entitled to the $192.27 balance remaining after satisfaction of Earthmovers' lien.

The judgment below is affirmed.

AFFIRMED.

REYNOLDS, P. J., and ROMANG, J., concur.