No. 14803

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

HAROLD LEE STURDEVANT, JR.,

Plaintiff and Appellant,

vs.

FIRST SECURITY BANK OF DEER LODGE,
a banking corporation, and FIRST
NATIONAL BANK OF HELENA, a nationally
chartered bank,

Defendants and Respondents.

Appeal from:   District Court of the First Judicial District,
Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Tipp, Hoven and Skjelset, Missoula, Montana

For Respondents:

Daniels and Mizner, Deer Lodge, Montana

Submitted on briefs: January 24, 1980

Decided: FEB 13 1980

Filed: FEB 13 1980

Thomas J. Kearney
_____ Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appeal is from a summary judgment granted in the District Court, First Judicial District, Lewis and Clark County. The District Court entered summary judgment upholding the right of the respondent banks to repossess a Mooney aircraft and sell the same; the proceeds to be applied to debts owed by Harold Lee Sturdevant, Sr. to the banks.

The action was filed by Harold Lee Sturdevant, Jr. on October 31, 1978 when the plaintiff allege that a Mooney aircraft was wrongfully repossessed by the defendant banks. He prayed for a preliminary injunction restraining the disposing of the aircraft and asked that he be given possession of it during the pendency of the suit. The District Court issued a temporary restraining order. The defendant banks filed motions to dismiss on the ground that the complaint failed to state a claim upon which relief could be granted. On November 21, 1978, a hearing was held on the motions to dismiss and at the same time on an order to show cause why a preliminary injunction should not be granted to give plaintiff temporary possession of the plane. Upon stipulation by counsel, the motions to dismiss were converted to motions for summary judgment and after posthearing briefs were filed and the matter submitted, the court granted summary judgment in favor of the banks.

The agreed facts are that on August 4, 1972, Harold Sturdevant, Sr. (plaintiff's father) executed a security agreement with First Security Bank of Deer Lodge securing a note for $15,069.62 to purchase a Mooney aircraft. The plane was listed as collateral on the security agreement which was recorded with the FAA on January 23, 1973.

-1-

On August 21, 1975, the loan had been paid down by the father but the note was renewed by him for a total sum of $10,970. There is no evidence that any security agreement in connection with this loan was filed with any office.

On April 7, 1977, the father executed a security agreement with First Security Bank of Deer Lodge for a loan of $32,249.40 to purchase a Cessna airplane which was to be its collateral. There is no evidence that this security agreement was filed with any office.

On October 25, 1977, Harold Sturdevant, Jr. purchased the Mooney plane from his father. No notice of this sale was given to the secured bank and there is no evidence that the sale was authorized by the Bank. Harold Sturdevant, Jr. knew of the existing security interest in the plane when he purchased it. On October 4, 1978, payments to the bank on the Cessna plane and the Mooney plane were delinquent. Plaintiff's father mailed a check to the Bank to satisfy the obligation on the Mooney plane.

On October 6, 1978, First Security Bank of Deer Lodge in conjunction with First National Bank of Helena repossessed the Mooney plane for delinquency of the payments on the second Mooney loan.

On October 9, 1978, the Bank received the payment on the Mooney debt that had been mailed by the father on October 4.

After the repossession, the son personally tendered payment of $1,632.54 and $47.79 (storage costs), the full amount of the remaining Mooney obligation, in an attempt to redeem the Mooney plane, pursuant to section 87A-9-506, R.C.M. 1947 (now section 30-9-506, MCA). The tender was refused by the defendant banks. The amount is presently deposited with the court pending the

-2-

outcome of the suit.  It is clear that the defendant banks intend to sell the Mooney plane to satisfy the delinquent obligations on the Cessna loan.

On that statement of facts, the son phrases the issue as whether a bank may hold property for the payment of a debt of another when that property is no longer owned by the borrower and is not described in the security agreement.

We restate the issues as follows:

(1)  Does the security agreement of August 4, 1972 in which the Mooney aircraft is listed as collateral include a security interest for the later incurred Cessna debt of the father?

(2)  What effect does section 30-9-311, MCA, have on the sale of the Mooney aircraft by the father to the son?

(3)  What are the redemption rights of the son under these facts and under section 30-9-506, MCA?

Each security agreement executed in this case contained the following language, described by the District Court as a "dragnet clause":

> "The undersigned (hereinafter called Borrower) hereby grants to the secured party in the above note (hereinafter called 'Bank') a security interest in the following described property (hereinafter called 'Collateral') including proceeds and products:  [herein is specific property description] together with all parts, accessories, repairs, improvements and accessions thereto now or hereafter at any time made or acquired; and All property of every kind and description in which the Borrower has or may acquire any interest now or hereafter at any time in the possession or control of the Bank for any reason including without limitation, property delivered to the Bank as collateral for safekeeping, or for collection or exchange for other property, and all dividends and distributions on and other rights in connection with such property to secure payment to the Bank at its banking house at the address stated on this note and all other notes given

-3-

> hereafter in renewal thereof, and all other
> notes of Borrower concurrently herewith,
> heretofore or hereafter delivered to or
> purchased or otherwise acquired by the
> Bank and all other liabilities and indebted-
> ness of Borrower to Bank due or to become
> due, direct or indirect, absolute or con-
> tingent, joint or several, howsoever created,
> arising or evidenced, now existing or here-
> after at any time created, arising or incurred,
> (hereinafter called 'Secured Obligations')."

The District Court found that the foregoing clause was clear, unambiguous and therefore it must be upheld. In Re Riss Tanning Corporation (2nd Cir. 1972), 468 F.2d 1211; Kenneally v. Standard Electronics Corporation (8th Cir. 1966), 364 F.2d 642; In Re Iredale's Ltd. (9th Cir. 1973), 476 F.2d 938.

Nothing in the Uniform Commercial Code that we are able to find prohibits such a clause as was used in these security instruments. Therefore, the effect of the execution of the security interest in the Mooney aircraft instrument, being very broadly stated, extends to and covers the debt incurred in connection with the Cessna aircraft, even though a separate security agreement was executed for that purchase.

The broad language used in the first Mooney security agreement meant that the Mooney aircraft was collateral not only for the first note, but for the renewal note, and for any other subsequent loans made by the bank to Harold Sturdevant, Sr.

The security agreement for the Mooney aircraft had a further provision that prevented sale of the Mooney unless the proceeds of the sale were paid to the bank. That provision stated:

> "Borrower will not sell, transfer, lease or
> otherwise dispose of the Collateral, or attempt
> or offer to do any of the foregoing without
> the prior written consent of the Bank, and unless
> the Proceeds of any such sale, transfer, lease,
> or other disposition are paid directly to the
> Bank."

-4-

The bank had no knowledge of, and did not receive the proceeds of the sale. Harold Lee Sturdevant, Jr. argues however, that he was within his rights to purchase from the father under section 30-9-311, MCA, of the Uniform Commercial Code, which provides as follows:

> "The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default."

It is incorrect to assume that section 30-9-311, MCA, permits a transfer by a debtor of collateral under a security agreement free of the security interest of the creditor in the collateral. Sturdevant, Jr. refers us to the official Code Comment under section 9-311, Uniform Commercial Code, apparently to the language regarding the purpose of that section which states that it is "[t]o make clear that in all security transactions under this Article, the debtor has an interest (whether legal title or an equity) which he can dispose of and which his creditors can reach".

The body of a law developing with respect to this section indicates that the interest of the debtor in the collateral may be transferred by him even though the security agreement purports to prohibit such transfer and makes the transfer a default. Production Credit, Etc. v. Equity Coop, Etc. (Wis. 1978), 261 N.W.2d 127. However, the fact that the collateral may be transferred voluntarily or involuntarily does not destroy or adversely affect a prior perfected security interest, without the consent of the secured party. Am. Heritage Bank & Trust Co. v. O & E., Inc. (Colo. 1978), 576 P.2d 566, 568.

In fact section 30-9-311, MCA is intended to protect the secured creditor's interest by assuring that any sale of the collateral or transfer by operation of law is subject to the security interest. Earthmovers, Inc. v. Clarence L. Boyd Company, Inc. (Okla. App. 1976), 554 P.2d 877, 879. Irrespective of the section, a security agreement may declare that the debtor commits a default when he makes a transfer of the collateral because the creditor has a right to determine who shall be the debtor in possession. Poydan, Inc. v. Agia Kiriaki, Inc. (N.J. 1974), 130 N.J. Super. 141, 325 A.2d 838.

Therefore, the father had the right to transfer his interest in the Mooney airplane to his son where the security instrument is perfected, and he is not in default; but the creditor, without knowledge of the transfer and under this agreement, not having received the proceeds, could under the security agreement consider such a transfer a default. In any event, the security interest of the creditor here followed the collateral though the transfer occurred under section 30-9-311, MCA.

The rights of redemption of the son are found in section 30-9-506, MCA. That section provides:

> "At any time before the secured party has disposed of collateral or entered into a contract for its disposition under 30-9-504 or before the obligation has been discharged under 30-9-505(2), the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses."

-6-

Here the agreed facts are that the father mailed a check for the balance of the Mooney debt before the repossession but the check was received by the bank after the repossession. Also the sum tendered covered only the amount of the Mooney debt and storage costs. In this case, section 30-9-506, MCA, required more: the debtor or any other secured party should tender "fulfillment of all obligations secured by the collateral." In this case that included the further debt on the Cessna airplane. Since that full tender was not made, the tender offered by the son in this case did not fulfill the requirements of section 30-9-506, MCA.

No questions are raised as to the identity of the aircraft, or the propriety of the repossession, except as we have discussed foregoing. Accordingly, we affirm the District Court.

_____
                  Justice

We Concur:

_____
      Chief Justice

_____

_____

_____
        Justices

-7-