C. BUD RACICKY AGENCY, INC.,
Appellant (Defendant),

v.

WOOD GUNDY, INC.,
Appellee (Plaintiff).

No. 88–60.

Supreme Court of Wyoming.

Jan. 9, 1989.

---

Georg Jensen of Law Offices of Georg Jensen, Cheyenne, for appellant.

Peter G. Arnold of Peter G. Arnold, P.C., Cheyenne, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

Appellant C. Bud Racicky Agency, Inc., as the holder of a prior and superior security interest in certain collateral, appeals a judgment in favor of appellee Wood Gundy, Inc., a junior secured creditor, in an action involving allocation of the proceeds from the repossession and sale of the collateral. Appellant contests the district court's grant of judgment to appellee for $6,364.02, representing certain interest charges and attorney's fees disallowed to appellant as not being expenses reasonably incurred in the disposition of the collateral.

We affirm in part, reverse in part, and remand.

Appellant states the issues in this manner:

1. Did the court err in finding and concluding that the defendant could not charge against the proceeds of the sale of collateral certain costs, expenses and fees, including:

(a) interest provided for under the purchase agreement and security agreement;

(b) attorney's fees incurred in the perfection, enforcement and protection of the defendant's liens;

(c) attorney's fees incurred in the repossession of the collateral; and

(d) interest on the repossession expense of the defendant provided for under the agreement?

2. What costs of a secured party can legally be contracted to be paid by the debtor in a security agreement and loan agreement, and do they include the charges above?

3. What costs of a secured party can legally be charged and collected under the Uniform Commer[ci]al Code after default from the disposition of the collateral, and do they include the charges above?

Appellee simplifies and reduces the issue to this statement:

Whether, in determining what expenses were "reasonable" in the disposition of repossessed collateral and in determining whether the secured party acted in good faith, the trial court may disallow expenses which are otherwise provided for by the security agreement.

The relevant facts in this case are not in dispute and were largely stipulated to by the parties prior to trial. On February 11, 1984, appellant[1] sold an Arabian horse named TR Leading Lady and a fur coat to Catherine Jacobs, who was at that time an employee of appellee.[2] The purchase price for the horse was $59,500, and the purchase price for the coat was $7,500, for a total purchase price of $67,000. Pursuant to an installment sales contract, Ms. Jacobs made a down payment of $20,100 and agreed to pay the balance of $46,900, plus interest at the rate of ten percent per annum, in twelve quarterly installments, with the first installment being due on May 11, 1984.[3] Ms. Jacobs executed a promissory note in favor of appellant for the balance of the purchase price. On the date of purchase, Ms. Jacobs and C. Bud Racicky, as

representative of appellant, signed what the parties in this case refer to as a "so-called security agreement."[4] After concluding the purchase of the horse, Ms. Jacobs apparently transported the animal to her home in Ontario, Canada.

Ms. Jacobs failed to make any of the installment payments, including the first installment assertedly due on May 11, 1984. On May 18, 1984, appellant's Canadian counsel obtained an order from the Supreme Court of Ontario, Canada, permitting a late filing in that province of the financing statement with respect to TR Leading Lady, thereby perfecting appellant's security interest in the horse.[5] Appellant repossessed the horse on July 31, 1984, and boarded it in Toronto until August 13, 1984, at which time appellant had the horse transported initially to Cheyenne, Wyoming, and thereafter to Arizona. On August 10, 1984, Ms. Jacobs assigned any interest she had in the horse, along with all her other possessions, to appellee by execution of a security agreement.

On August 20, 1984, appellee made a written demand upon appellant's Canadian counsel for any surplus proceeds that might remain after sale of the horse, and on September 5, 1984, appellee perfected its security interest in TR Leading Lady in Arizona. Appellant notified appellee on November 26, 1984, of its intention to sell the horse at an auction to be held on December 1, 1984. Appellant sold the horse

1. C. Bud Racicky, as an officer, director, stockholder, and employee of appellant, acted on appellant's behalf in the transactions involved in this case.

2. We cannot ascertain from the contents of the record on appeal, including the sale and security documents, where the sale transactions occurred. It appears that delivery of the horse to Ms. Jacobs may have taken place in Arizona.

3. The installment sales contract and the promissory note indicate the first payment was due on June 11, 1984. The stipulation of facts, however, indicates the first installment was due May •11, 1984, and this date is reiterated by the parties in their briefs. Additionally, we note that May 11, 1984, represents the end of the first quarter after the sale. The discrepancy in dates does not affect the issues in this appeal.

4. The parties' designation of the security agreement reflects understandable doubt as to the

validity of the agreement, although the validity of the agreement is not raised as an issue on appeal. The copy of the security agreement contained in the record is signed by the parties, but it does not describe the collateral as required by Wyo.Stat. § 34–21–922(a) (1977) (as amended 1983). The agreement, as found in the record, appears to be a standardized security agreement in which none of the applicable blanks have been filled in by the parties.

5. Apparently, as asserted by the parties but not directly shown in the record, under the law of Ontario, a deadline is fixed for filing the financing statement required to perfect a security interest. The Uniform Commercial Code, and Wyoming's version thereof, does not contain such a deadline, although the date of filing obviously affects priorities.

for $90,000 at that auction, apparently held in Arizona.

On April 14, 1986, appellee filed a complaint in the district court in Cheyenne, Wyoming, alleging essentially that appellant had retained surplus proceeds from the sale of the collateral in contravention of appellee's rights as a junior secured creditor and seeking a judgment against appellant for the amount of surplus proceeds. Discovery was conducted, and the parties eventually entered into a stipulation of the facts, including those set out above. In the stipulation, the parties agreed that, as of the date of repossession of the horse, July 31, 1984, Ms. Jacobs owed appellant $49,-084.38 in principal and interest. The parties also agreed that $24,907.76 of the expenses itemized by appellant as costs for repossession, holding, preparing for sale, and sale were reasonable. The parties disagreed, however, as to the reasonableness of the remaining $17,063.71 in expenses incurred by appellant in the disposition of the collateral. The disputed expenses were listed in the stipulation as follows:

| | |
|---|---|
| Interest from 7/31/84 to 12/13/84 | $ 1,721.90 |
| Canadian Attorney's fees | $ 4,246.81 |
| Attorney's fees [Wyoming] | $ 2,607.81 |
| Discount Installment note (December sale) | $ 7,200.00 |
| 18% interest on repo expenses to 12/13/84 | $ 395.31 |
| C.M. Racicky expense to attend Dec. sale | $ 891.88 |
| TOTAL | $17,063.71 |

After an October 21, 1987, bench trial,[6] the district court took the matter under advisement, requesting memoranda from the parties. In a subsequent opinion letter, the district court concluded that the Canadian attorney's fees were incurred in perfection of appellant's security interest and that, therefore, they were not allowable as reasonable expenses incurred in the disposition of the collateral. The court additionally disallowed appellant the $1,721.90 in post-repossession interest and the $395.31

6. A transcript of the trial was not included in the record on appeal.

7. Choice-of-law rules regarding perfection of security interests and the effect of perfection or nonperfection continue to be governed by the

in interest on repossession expenses. The district court found the other disputed expenses claimed by appellant were reasonable for the disposition of the collateral. Thus, of the $17,063.71 in disputed expenses, the district court found $6,364.02 to be unreasonable, and appellee was granted a judgment in that amount. This appeal followed.

■ As a preliminary matter, and one not raised by the parties, we note that the district court resolved this dispute by applying Wyoming law. The installment sales contract between appellant and Ms. Jacobs, however, provided that the buyer granted to seller a security interest in the horse pursuant to the Arizona Uniform Commercial Code and that, upon default, seller was entitled to all remedies available to a secured party under that Code. In the proceedings below the parties mentioned, in passing, the applicable Arizona statutes, but they primarily relied upon Wyoming statutes in making their respective arguments. The parties have continued to rely upon Wyoming law in their appellate arguments.

Wyoming has adopted the 1972 amendments to the Uniform Commercial Code, which altered the choice-of-law provisions for Article 9 from those in the 1962 version of the Code. See Van Baalen, *Wyoming Adopts the "1972 Amendments" to Uniform Commercial Code Article 9—The Revisions and Some Continuing Problems,* 19 Land & Water L.Rev. 581 (1984). Under the 1972 version of the Uniform Commercial Code, choice-of-law rules for nonperfection issues, such as procedures upon default, are governed by § 1–105 (Wyo.Stat. § 34–21–105 (1977)), a general choice-of-law rule applicable to the entire Code. J. White and R. Summers, *Uniform Commercial Code* § 22–9 (2d ed. 1980).[7] Section 34–21–105(a) provides:

Except as provided hereafter in this section, when a transaction bears a rea-

specific Article 9 provision found in Wyo.Stat. § 34–21–903 (1977) (as amended 1983) (U.C.C. § 9–103). See Van Baalen, *supra* at 582, and J. White and R. Summers, *supra.*

sonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this act [§§ 34–21–101 to –1002] applies to transactions bearing an appropriate relation to this state.

Here, although much of the pertinent information is lacking or unascertainable from the record, it would appear that the transactions in this case bear a reasonable relation to Wyoming—at least to the extent that Wyoming is the residence of appellant (seller/secured party) and all payments under the installment sales contract were to be made to appellant in Wyoming. Further, despite the original agreement between Ms. Jacobs and appellant, the consistent presentation of Wyoming law by the parties to this litigation indicates their agreement that Wyoming law should control the issues in this case, and neither party has contested the district court's application of Wyoming law. Finally, the controlling statute in this controversy, § 9–504 of the Uniform Commercial Code, is virtually identical in Wyoming and Arizona. See Wyo.Stat. § 34–21–963 (1977) (as amended 1983) and Ariz.Rev.Stat.Ann. § 47–9504 (1988).[8] Therefore, we will apply Wyoming law to this case, particularly Wyoming's version of the Uniform Commercial Code.

The issues in this case concern the application of the proceeds resulting from the secured party's disposition of the repossessed collateral. Resolution of this controversy requires that we look to § 34–21–963(a) (U.C.C. § 9–504), which provides:

A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to the article on sales

(article 2). The proceeds of disposition shall be applied in the order following to:

(i) The reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorney's fees and legal expenses incurred by the secured party;

(ii) The satisfaction of indebtedness secured by the security interest under which the disposition is made;

(iii) The satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefor is received before distribution of the proceeds is completed. If requested by the secured party, the holder of a subordinate security interest must seasonably furnish reasonable proof of his interest, and unless he does so, the secured party need not comply with his demand.

Appellant first contends that the two items of interest disallowed by the district court were properly chargeable to the proceeds from the sale of the collateral. We agree.

 We first address the $1,721.90 in interest which accrued between the date of repossession and the date of sale. We observe that there was no evidence, nor any argument, that the time period between repossession and resale was unreasonable. Pursuant to subsection (d) of § 34–21–963,[9] the security interest remains in effect and is not discharged until the secured party disposes of the collateral after default. See 9 W. Hawkland, *Uniform Commercial Code Series* § 9–504:11 (1986). Correspondingly, Wyo.Stat. § 34–21–965 (1977) (as amended 1983) (U.C. C. § 9–506) provides that the debtor's (or

8. Corresponding subsections (c) and C of the two statutes vary slightly, in a manner not pertinent to this case, relating to notification to other parties of the proposed sale of the collateral.

9. Section 34–21–963(d) provides in pertinent part:

When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto.

other secured party's) right of redemption remains in effect until the secured party has (1) disposed of the collateral, (2) entered into a contract for disposition of the collateral, or (3) accepted the collateral in satisfaction of the obligation. See *Rogers v. Associates Commercial Corporation*, 129 Ariz. 499, 632 P.2d 1002, 32 U.C.C.Rep. Serv. 635 (Ariz.App.1981); and *Sturdevant v. First Security Bank of Deer Lodge*, 186 Mont. 91, 606 P.2d 525, 28 U.C.C.Rep.Serv. 569 (1980). Additionally, if a deficiency remains after sale of the collateral, the debtor is liable for interest accruing on such deficiency. See *United States ex rel. Small Business Administration v. Gore*, 437 F.Supp. 344, 23 U.C.C.Rep.Serv. 256 (E.D.Pa.1977). It is clear that, upon sale of the collateral, the secured party cannot recover unearned interest. *Bostwick–Westbury Corp. v. Commercial Trading Company, Inc.*, 94 Misc.2d 401, 404 N.Y.S.2d 968 (1978); 9 R. Anderson, *Uniform Commercial Code* § 9–504:73 (1985). It should be equally apparent, however, that, unless the collateral is accepted in satisfaction of the debt, interest continues to accrue on the underlying debt until the time of sale of the collateral and thereafter to the extent that a deficiency remains. Thus, upon sale of the collateral, the secured party is entitled to the unpaid balance and the matured interest up to the time of payment; i.e., sale. See *Bostwick–Westbury Corp.*, 404 N.Y.S.2d 968. We hold, therefore, that appellant was entitled to charge the disputed $1,721.90 against the proceeds from the sale of the collateral as interest accruing between the date of repossession and the date of sale.

■ We also agree with appellant's contention that it was entitled to retain the $395.31 in interest on its repossession expenses. The district court determined that this interest was not a reasonable expense of repossession and resale. We observe, however, that the security agreement provided for payment of such interest. The security agreement stated that, should the debtor fail to perform any of its obligations to the secured party, i.e., default, the secured party

may, in addition to any other remedy, take whatever action may be necessary to remedy such failure and should such action require the expenditure of monies to protect and preserve Secured Party's interest in the collateral * * * *then the amount of such expenditures shall become forthwith due and payable by Debtor with interest at the rate of eighteen percent (18%) per annum.*

(Emphasis added.)

C.M. "Bud" Racicky, in an affidavit, stated that the $395.31 figure reflected the interest on the costs of repossession, excluding attorney's fees, up to the time of sale. In the stipulation of the parties, appellee agreed that this expense was incurred, disagreeing only as to its reasonableness. In 9 R. Anderson, *supra*, § 9–504:72 at 770 (quoting *General Finance Corporation of Georgia v. Sprouse*, 577 F.2d 989, 992, 24 U.C.C.Rep.Serv. 960 (5th Cir.1978)), the author states: " 'It is clear that under Article 9 ... a security agreement may impose various charges, not found in the promissory note, in the event of default.' " Thus, we conclude that, under the security agreement, this interest expense became part of the obligation and was allowable as part of the "indebtedness secured by the security interest" pursuant to § 34–21–963(a)(ii). It must be remembered that appellee took its security interest in the collateral subject to and with knowledge of appellant's prior security interest. We hold that the district court erred in not allowing appellant to charge this interest against the proceeds of the sale.

■ Appellant also contends that the district court erred in not allowing the Canadian attorney's fees as an expense chargeable against the proceeds from the sale of the collateral. We do not agree.

Appellant argues, in what is essentially an evidentiary challenge although not presented as such, that the Canadian attorney's fees were a reasonable expense of retaking and holding under § 34–21–963(a)(i). The district court determined, however, that the Canadian firm was retained in order to perfect appellant's

security interest and that the fees were largely incurred in that endeavor. The evidence in the record generally supports this conclusion by the district court.

It is undisputed that, in order to perfect appellant's security interest in the horse, the Canadian firm had to petition the Supreme Court of Ontario to obtain permission to file appellant's financing statement in Ontario beyond a deadline imposed by provincial law. While there is some record evidence indicating that part of the Canadian attorney's fees may have involved retaking expenses, such as stable fees, we are unable to ascertain with any certainty the basis for the charges billed by the Canadian firm. Copies of the firm's billings contained in the record do not clearly delineate the source of the various charges. In addition, appellant did not include a transcript of the trial, apparently containing testimony on this issue, as part of the record on appeal. The district court heard the testimony at trial and reviewed the affidavits and other materials submitted by the parties in making its determination. On this record we cannot say that the district court's finding that these fees were primarily incurred in the perfection of appellant's security interest was clearly erroneous, inconsistent with the evidence, or contrary to the great weight of the evidence. *O's Gold Seed Company v. United Agri–Products Financial Services, Inc.*, 761 P.2d 673 (Wyo.1988).

Appellant further contends, nevertheless, that, even if the fees were incurred in perfection of its security interest, such action was required in order to repossess the collateral and was therefore an expense of retaking. As to this contention, it is sufficient to say that § 34–21–963(a)(i) cannot reasonably be read as envisioning attorney's fees incurred in perfection as being recoverable as expenses of repossession or resale. The Canadian attorney's fees were not recoverable under § 34–21–963(a)(i) as reasonable attorney's fees for the retaking and sale of the collateral.

Appellant additionally suggests, however, that, even if not allowable under paragraph (i) of § 34–21–963(a), the Canadi-

an attorney's fees should be allowed as part of the "indebtedness secured" under § 34–21–963(a)(ii) because, under the security agreement, the debtor was responsible for perfection expenses. Although we found appellant's similar argument persuasive with respect to the interest on repossession expenses, we cannot accept it in connection with these extraordinary attorney's fees. The security agreement provided that the debtor "will reimburse Secured Party upon demand for all expenses incurred in connection with perfecting the security interest granted herein." We initially note that there is no evidence in the record of a demand by appellant upon Ms. Jacobs for reimbursement of perfection expenses. More importantly, even where a contract provides for attorney's fees, the trial court may disallow them in its discretion. In *Combs v. Walters*, 518 P.2d 1254, 1255 (Wyo.1974), we stated:

> While the general rule is that a valid provision for attorney's fees in a note is as much an obligation of the contract as any part of it, the trial court still has discretion in exercising its equitable control to allow only such sum as it thinks reasonable. A trial court in its discretion may properly disallow attorney's fees altogether on the basis that such recovery would be inequitable.

See also *State Surety Company v. Lamb Construction Company*, 625 P.2d 184 (Wyo.1981). As the district court noted in its decision letter, it is not clear whether or not appellant was aware that the horse would be taken to Canada. Ms. Jacobs, however, did list an Ontario address on the installment sales contract. Also, it can reasonably be assumed that appellant did not contemplate the filing deadline imposed under Canadian law. Nevertheless, the inordinate legal expenses incurred in perfecting appellant's security interest primarily resulted from appellant's failure to timely perfect. We conclude therefore that, even though perfection expenses were provided for by contract, the district court, in its discretion, could properly disallow such fees as unreasonable. The district court was not in error in disallowing the Canadian attorney's fees.

In conclusion, we reverse the judgment of the district court to the extent that it disallowed appellant to apply the proceeds from the sale of the collateral to the interest accruing from the date of repossession to the date of sale and to the interest on the repossession expenses. We affirm the disallowance of the Canadian attorney's fees.

Affirmed in part, reversed in part, and remanded for entry of judgment consistent with this opinion.