**Dale L. COMER and Colleen K. Comer,
Appellants (Plaintiffs),**

v.

**GREEN TREE ACCEPTANCE, INC.,
Appellee (Defendant).**

No. 92–283.

Supreme Court of Wyoming.

Aug. 26, 1993.

Rehearing Denied Sept. 15, 1993.

Paul J. Drew, Drew & Carlson, Gillette, for appellants.

Bruce S. Asay, Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

THOMAS, Justice.

In this case, we revisit the concept of strict foreclosure of a security interest. The single issue is whether Green Tree Acceptance, Inc. (Green Tree) effected a strict foreclosure with respect to a mobile home as to which it held a security interest. The debtors, Dale L. Comer and Colleen K. Comer (the Comers), sought a declaratory judgment holding they were not responsible for a deficiency, contending in the trial court that a strict foreclosure of the mobile home had been accomplished by Green Tree obtaining title in its own name. The trial court adopted the position advanced by Green Tree to the effect that, since it had furnished an appropriate notice of private sale to the Comers and had not violated any provision of the Wyoming Uniform Commercial Code (UCC) in any respect, it was entitled to a dismissal of the Comers' complaint. We hold the trial court failed to correctly apply Wyoming law in arriving at its decision in this case. The dismissal of the case by the trial court is reversed, with directions to enter judgment in favor of the Comers.

The Comers state the issue for review in their Brief of Appellants as:

> If a secured creditor repossesses its collateral, a mobile home, and thereafter releases its lien and causes a certificate of title to be issued to the secured creditor as owner of the mobile home, has the secured creditor effected a strict foreclosure on its collateral?

Green Tree, as appellee in the case, says the issue on appeal is:

> Did the Appellee utilize the appropriate procedure in repossessing and transferring its security interest?

The Comers purchased a new mobile home on May 24, 1985 and executed a security agreement with the seller. The seller then assigned its security interest in the mobile home to Green Tree. Green Tree appropriately filed a financing statement reflecting its security interest in the mobile home. Almost four years later, the Comers sold the mobile home to another individual who made a cash payment and agreed to assume the payments on the loan balance. That agreement was accepted by Green Tree, but the Comers were not released from liability on the debt. The Comers' purchaser failed to make the payments under the contract, and default occurred in the fall of 1989.

In January of 1990, Green Tree notified the Comers of the default and the amount due. Default was not cured within the thirty days allowed by Green Tree, and Green Tree repossessed the mobile home. On March 1, a notice from Green Tree was addressed to the Comers, which they received on March 13, 1990, advising them the mobile home had been repossessed and, at any time after ten days, it would be sold at a private sale. The Comers also were advised of their right to redeem the property by paying the balance due at any time prior to a sale. The Comers did not redeem the mobile home.

On April 2, 1990, the county clerk of Crook County issued a certificate of title showing Green Tree was the owner of the mobile home, upon proof it had been repossessed from the Comers' purchaser. Prior to April 2, on March 21, 1990, Green Tree had executed a Certification of Taxes Paid in which it certified that it was the true and lawful owner of the mobile home; it had filed a termination statement in which it certified, as the secured party, that it "no longer claims a security interest under the financing statement * * * "; and it had executed an Affidavit of Repossession of a Motor Vehicle stating that it was made for the purpose of establishing ownership. At some later time, Green Tree had the mobile home appraised, sold it, and was left with a deficiency. Green Tree then sought to recover the deficiency, contending the Comers remained liable for it.

On June 20, 1991, the Comers sought a declaratory judgment by a complaint filed in the district court. The complaint requested that the court declare Green Tree had effected a strict foreclosure of its collateral and, for that reason, was not entitled to a deficiency judgment. The district court found Green Tree had given proper notice of its intent to sell the collateral at a private sale; had transferred title to its name to facilitate the sale; and had not sent the statutory notice of intent to retain the collateral in satisfaction of the obligation. The district court ruled strict foreclosure required Green Tree to affirmatively indicate an intent to retain the collateral in satisfaction of the obligation and, on November 24, 1992, an order was entered dismissing the Comers' complaint.

■ The UCC, as adopted in Wyoming, WYO.STAT. §§ 34.1–1–101 to –10–104 (Supp. 1993 and 1991 Repl.), preserves the historic rights and remedies of the parties when money is loaned and a repayment is secured by personal property. On default, the creditor or secured party can reduce the claim for the money owed to judgment and proceed to levy upon the collateral, in which case the judicial sale is a foreclosure of the security interest. WYO.STAT. § 34.1–9–501 (1991 Repl.). Alternatively, the creditor or secured party can obtain possession of the property; cause it to be sold; and pursue a claim for any deficiency. WYO. STAT. § 34.1–9–504 (1991 Repl.). The disposition of the collateral may be by public or,

under some limited circumstances, private sale. WYO.STAT. § 34.1–9–504(c). In addition, if sixty percent of the debt has not been paid, the creditor or secured party may propose to retain the collateral in satisfaction of the obligation. WYO.STAT. § 34.1–9–505(b) (1991 Repl.). If this latter remedy is pursued, notice of such a proposal is required unless it has been waived by the debtor. The UCC also preserves the right of the debtor to redeem the property, but that right must be exercised prior to the time that the secured party has disposed of the property or made a contract for its disposition under § 34.1–9–504, or prior to the time the obligation is satisfied under § 34.1–9–505(b).

In this appeal, the Comers contend Green Tree elected to retain the mobile home in satisfaction of the obligation when it released its lien and caused title to be placed in its name. We hold, in agreement with the Comers' contention, that, when a secured creditor repossesses collateral and causes the title in the secured property to be placed in its name, it has effected a strict foreclosure. The election to retain the collateral in satisfaction of the debtor's obligation precludes the creditor from then seeking any deficiency.

This rule is supported by the provisions of the UCC and the cases interpreting those provisions. The default provisions in the UCC do not automatically transfer title to the secured party upon default. *Jeweler's Fin. Services, Inc. v. Chapes, Ltd.*, 181 Ga.App. 872, 354 S.E.2d 200 (1987). The provisions found in the UCC grant broad rights to the secured party to repossess the security in order to sell or otherwise dispose of that property upon default. When the creditor repossesses the secured property, however, it obtains only the right of possession, not title. *Jeweler's.* Under the UCC, default does not divest a debtor of all right and interest in the secured property, nor is the secured party, the creditor, vested with the unlimited power to deal with the property as it wishes. *Wells v. Central Bank of Alabama, N.A.*, 347 So.2d 114 (Ala.Civ. App.1977); (citing *State v. Weber*, 76 N.M.

636, 417 P.2d 444 (1966)). The debtor is granted the right to redeem the secured property and may exercise that right at any time before the secured party has disposed of it or has entered into a contract for its disposition. Furthermore, if the secured party should elect to retain the property in satisfaction of the debt, the right of redemption exists up until the obligation has been discharged by the creditor's election to retain the collateral. WYO.STAT. § 34.1–9–506 (1991 Repl.).

Green Tree released its security interest in this mobile home and then became the titled owner. In accomplishing the transfer of title, Green Tree exceeded the authority the statutes afford to a secured creditor and, in effect, the Comers' rights and interest in the property were abrogated, including the right to redeem the property. A right of redemption cannot be exercised if ownership of the secured property already has been transferred. When the creditor takes title to the repossessed collateral in its own name, after default and repossession, but prior to any disposition authorized by statute, the right of redemption afforded to the debtor becomes illusory. *Wells.* See also *Owens v. Auto. Recovery Bureau, Inc.*, 544 S.W.2d 26 (Mo. Ct.App.1977) (holding that unlawfully failing to permit redemption amounted to conversion).

The actions of a secured creditor that, in effect, defeat the right of a debtor to redeem cannot be reconciled with the specific grant by statute of the right to redeem. In order to harmonize the actions of Green Tree, in this instance, with the rights of the Comers under the UCC, Green Tree's decision to take title to the mobile home must be held to be a retention of the collateral in satisfaction of the Comers' obligation. Our rule, in Wyoming, is that, when the creditor takes title in its name or changes title to the repossessed property, the disposition of such property, for purposes of the UCC, has occurred. That step taken by a creditor unilaterally cuts off the debtor's right of redemption and, for that reason, it must be perceived as an election

to retain the collateral in satisfaction of the obligation.

■■ This holding is in harmony with the rule we previously have established that failure to strictly comply with the provisions of the UCC results in a forfeiture of any deficiency. *Hess v. Thomas,* 851 P.2d 10 (Wyo.1993); *Coones v. Fed. Deposit Ins. Corp.,* 848 P.2d 783 (Wyo.1993); *C. Bud Racicky Agency, Inc. v. Wood Gundy, Inc.,* 767 P.2d 601 (Wyo.1989); *Jackson State Bank v. Beck,* 577 P.2d 168 (Wyo. 1978); *Aimonetto v. Keepes,* 501 P.2d 1017 (Wyo.1972). We have adopted this absolute bar approach because it establishes the most definite deterrent to noncompliance by secured creditors. Since taking title in the creditor's name interferes with the statutory right of the debtor to redeem that property, non-compliance with the statutory remedies is apparent. That style of non-compliance is deterred by the invocation of the absolute bar approach.

■■ Green Tree argues, however, that, because it never provided the requisite notice under § 34.1–9–505(b), it cannot be held to have retained the collateral in satisfaction of the obligation. We cannot accept this position. A creditor cannot be permitted to gain an advantage by its failure to furnish the requisite notice. We agree with the analysis by the Supreme Court of Alaska, when it said:

> The requirement of notice to the debtor by a secured party proposing to retain the chattel in satisfaction of the obligation is obviously for the benefit of the debtor. * * *. As stated in 4 R. Anderson, Uniform Commercial Code 9–505:5, at 632 (2d ed. 1971):

> The creditor's failure to give notice of intention to retain the collateral in discharge of the debt does not prevent the debtor from showing that the collateral was in fact retained by the creditor and on the basis of such fact he may claim that he is discharged from further liability. The giving of notice protects the creditor from a subsequent claim that he should have sold the collateral.

*Moran v. Holman,* 514 P.2d 817, 820 (Alaska 1973).

The notice requirement serves to protect the interests of both the debtor and the creditor. If the debtor is satisfied the property is worth more than the balance owing, the debtor has the opportunity to redeem. Conversely, the creditor is protected from any claim for damages by the debtor. The failure to provide the notice exposes the creditor to liability and damages under WYO.STAT. § 34.1–9–507(a) (1991 Repl.), but that remedy does not automatically demonstrate that strict foreclosure has not occurred.

Green Tree also argues several other jurisdictions have rejected the concept of strict foreclosure absent explicit notice of the intention of the creditor to retain the property. Our review of the cases cited by Green Tree results in the conclusion all are factually distinguishable. In those cases, the creditors were charged with having perfected strict foreclosure because they retained the property for an extended period of time following repossession. *Chrysler Credit Corp. v. Mitchell,* 94 A.D.2d 971, 464 N.Y.S.2d 96 (1983); *First National Bank of Pennsylvania v. Cole,* 291 Pa.Super. 391, 435 A.2d 1283 (1981); *Haufler v. Ardinger,* 28 UCC Rep.Serv. 893 1979 WL 30107 (Mass.App.Div.1979); *Sparkle Laundry & Cleaners, Inc. v. Kelton,* 595 S.W.2d 88 (Tenn.Ct.App.1979). The creditor did not actually obtain title to the repossessed property in the creditor's name in any of those cases.

We previously have articulated our willingness to recognize an implicit election of strict foreclosure by a creditor as the creditor's remedy. *Durdahl v. Bank of Casper,* 718 P.2d 23 (Wyo.1986) (reversing summary judgment and remanding for the trier of fact to determine whether the bank had by implication elected to retain the collateral). The rule in this state is that, while failure to provide the notice under § 34.1–9–505(b) may expose the creditor to a claim for damages, the failure to furnish the notice does not invalidate a strict foreclosure if it has been accomplished.

██ Green Tree suggests there is a problem with respect to the result if, instead of a deficiency, it had experienced a surplus. Green Tree may well have encountered a problem by taking title in its name without affording the requisite statutory notice to the Comers. As we have noted, the Comers then could resort to the remedy provided under § 34.1-9-507(a) to recover any damages they had incurred as a result of the creditor's retention of the property without compliance with the provisions of the UCC. Creditors proceeding to collect on indebtedness outside the provisions of the UCC should expect problems.

██ As a final argument, Green Tree contends it had no option other than to place the title to the mobile home in its name because it could not otherwise transfer the property to a buyer. This contention is not correct. Addressing particularly the transfer of ownership of a mobile home, WYO.STAT. § 31-2-504(c) (1989 Repl.) provides:

> If ownership of a mobile home passes other than by voluntary transfer, the new owner shall apply for a new certificate of title therefor accompanied by such instruments and documents of authority or certified copies thereof as may be required to evidence or effect the transfer of title or interest in the mobile home.

The creditor can transfer repossessed property without taking title in its own name. The buyer may present to the county clerk the same documentation Green Tree used in this instance to effect a transfer of title to the buyer. These documents may include, among others, copies of the security agreement; affidavits concerning the peaceful repossession of the property; the demonstration of proper notice; and the sale of the property in a commercially reasonable manner. In Wyoming, a similar provision is extant for motor vehicles. WYO.STAT. § 31-2-104 (1989 Repl.).

██ We hold that, when a creditor takes title to repossessed collateral in its own name, a strict foreclosure is effected. A creditor is not entitled to a deficiency judgment once strict foreclosure has occurred. The failure to provide the required statutory notice does not prevent a conclusion of strict foreclosure; it simply exposes the creditor to liability under the penalty provisions of the UCC. We reiterate, in support of this decision, our rule that compliance with the provisions of the UCC is a condition precedent to recovery of any deficiency if the sale price of the collateral is not sufficient to satisfy the debt.

We reverse the decision of the district court and remand this case with direction to enter judgment in favor of the Comers, holding them not responsible for any deficiency.

CARDINE, Justice, dissenting.

I would affirm the decision of the district court judge. It is conceded that Green Tree has fully complied with every provision of the U.C.C. when Green Tree lawfully repossessed, lawfully took title in its name, did not give notice of intent to retain the collateral in satisfaction of the debt (because strict foreclosure was not intended), afforded all rights of redemption, lawfully sold the collateral, and now lawfully seeks to recover its loss by deficiency judgment. The sale must have been within a reasonable time, and it was. The U.C.C. provides for every aspect of this transaction. Yet the court refuses to accept the U.C.C. as enacted by the legislature and now proceeds to make new law. Under this new law, not found in the U.C.C., if the creditor, to facilitate resale, takes title in its name, it will always lose. If the secured property is worth more than the debt, the debtor can recover; and if it is worth less, the debtor pays nothing. And for what purpose? The court says it is for a bright line rule. I question if this "bright line" rule is of any value. But if it is, then surely it is the business of the legislature to enact the "bright line" rule and not this court.

There is a benefit to the creditor taking title to facilitate sale. The court suggests that the buyer, at sale after repossession, should be given, rather than title, a bushel basket of papers establishing the right of

repossession, notices, expiration of redemption rights, fair market value, and full compliance with the law. From these, the buyer may then obtain title. Thus now, by this decision, required foreclosure will make sale difficult and adversely affect the sale price.

Finally, I disagree with what is the basic premise for the court's decision—that Green Tree's taking title in its name "interferes with" and "abrogates" appellants' right of redemption. That statement certainly is not correct in this case, nor do I think it is correct in any case. In this case, appellants were repeatedly notified in writing of the right of redemption, encouraged to redeem, and informed of the balance of indebtedness and the amount necessary for redemption. They chose not to redeem for obvious reasons.

Also, I think it clear that a right of redemption is not lost by transfer of title.

The transferee takes title subject to the right of redemption.

So what we have here, purely and simply, is a court making law. Sadly it is the court making bad law, for from this day forward every buyer at private sale will receive a basket of papers which can be used to obtain title—and the title is good if the papers demonstrate full compliance with the law of repossession, foreclosure and sale.

A wizened old justice of the peace was asked, "Do judges make law?" He responded, "Of course they do. I made some myself today." And so today we too make law.